## STATE v. THOMPSON.

CRIMES—COAL MINES—HOURS OF LABOR—STATUTES—CONSTRUCTION.

1. A miner or laborer who voluntarily works more than eight hours in a calendar day in a coal mine is not punishable under the statute prescribing that eight hours shall constitute a day's work for all coal miners and laborers employed in a coal mine, and that "any owner, lessee or operator, his or its agent, employes or servants violating any of the provisions of this chapter shall be fined," etc., since such miner or laborer does not come within the class of persons enumerated in the penal provisions of the statute.

2. The statute (R. S. 1899, Secs. 2586-2589) provides that eight hours shall constitute a day's work for all coal miners and laborers employed in any coal mine, except where more hours of labor may be necessary to protect property or human life; that in all contracts between the owner, lessee or operator of any coal mine, with any such miner or laborer for his services as such, the word day shall be construed to be eight hours; and that "any owner, lessee or operator, his or its agent, employes or servants, violating any of the provisions of this chapter, shall be fined," etc. *Held,* that the words "employes and servants" used in the penal section of the statute were not intended to and do not include the miners and laborers employed in the mine and mentioned in the preceding sections, but that the persons designated by those words are that class of employes or servants who stand in the place of the owner, lessee or operator of the mine.

3. A penal statute cannot be extended by implication or construction to persons or things not expressly brought within its terms, nor to cases not within the letter of the statute.

4. All doubts as to the construction of a penal statute are to be resolved in favor of the defendant.

[Decided November 20, 1906.]          (87 Pac., 433.)

EXCEPTIONS by Prosecuting Attorney to rulings in a criminal case, in the District Court, Sheridan County, HON. CARROLL H. PARMELEE, Judge.

The facts are stated in the opinion.

*James H. Burgess,* County and Prosecuting Attorney, for the State.

Serious doubts have been entertained as to the validity and constitutionality of the statute regulating the hours of labor by miners and laborers employed in coal mines. It is elementary that the Legislature must clearly state what acts constitute a crime, and must explicitly prohibit the acts which constitute the offense. We admit that it is a very close question, whether the law sufficiently prohibits the working of more than eight hours in the coal mines of the state. It is clear that the law might have been more definite and express. The declaration by legislative enactment that eight hours shall constitute 'a day's work would seem to be equivalent to declaring that a greater number of hours does not constitute a day's work, upon the principle *expressio unius exclusio alterius,* and that it is unlawful to perform more work than eight hours in one day.

The doubt arising as to the constitutionality of the law springs from a consideration of the question whether coal miners constitute a reasonable classification for the purposes of eight hour legislation. Many cases lay it down as a rule that the statute must treat all alike, and it must embrace all and exclude none whose conditions and wants render legislation necessary or appropriate to them as a class. (Low v. Printing Co., 59 N. W., 366; Randolph v. Wood, 49 N. J. L., 88.) The question of a reasonable classification depends as a rule upon the facts of each particular case, and it is, therefore, a difficult matter to apply to the case at bar general principles, but it is considered that the chief argument against the constitutionality of the law is that it singles out and discriminates against the coal miners of the state, while others who are in the same class are omitted from it, so that what is lawful for one mining gold or silver or copper is made unlawful for a man mining coal when the conditions are substantially the same.

The constitutionality of statutes limiting hours of labor in mines has been before the courts in several cases, and the statutes upheld. (Holden v. Hardy (Utah), 46 Pac., 756;

*Ex parte* Kair (Nev.), 80 Pac., 463; *In re* Boyce (Nev.), 75 Pac., 1; State v. Cantwell (Mo.), 78 S. W., 569; State v. Nelson, 39 N. E., 22; see also People v. Havnor, 43 N. E., 541; People v. Pellet, 57 N. W., 194.)

*W. E. Mullen,* Attorney General, also for the State.

The objections urged against the statute under which the information was filed are that it violates the terms of the State Constitution: Section 2, Article I, which guarantees equal rights to all persons in their right of life, liberty and the pursuit of happiness; also Section 6 of Article I, which provides that no person shall be deprived of life, liberty or property without due process of law; and Section 1 of Article XIX, which provides that eight hours actual labor shall constitute a lawful day's work in all mines; that it contravenes the 14th amendment of the Federal Constitution; that the statute is too indefinite and uncertain to constitute a valid penal statute.

The exact question, however, before the court is whether the information does or does not state facts sufficient to constitute a punishable offense. It is, therefore, important to determine whether the section prescribing the penalty is broad enough to include the punishment of miners and laborers. The Utah case of Holden v. Hardy, 46 Pac., 756, thereafter appealed to the United States Supreme Court (169 U. S., 366), turned upon the construction of a provision of the Utah Constitution, making it the duty of the Legislature to pass laws providing for the health and safety of employés in factories, smelters and mines, a provision not found in the Wyoming Constitution. The cases from Nevada cited in the briefs were cases where employes were prosecuted for actually working more than eight hours at occupations described in the statute. But the penal clause in the Nevada statute is much broader than ours, and is plainly meant to include the employe as well as the employer.

The constitutional aspect of statutes of this character is quite generally discussed and at great length in a very

instructive case from Colorado. (*In re* Morgan, 47 L. R. A., 52.) Section 1, concerning labor, Article XIX, of the Wyoming Constitution, provides that: "Eight hours actual work shall constitute a lawful day's work in all mines and in all state and municipal works." That would seem to be sufficient to support the statute here brought in question. The constitutional provision is as broad as the statute itself, except that the statute fixes a penalty. The constitution and laws of Utah are much broader. The constitution of the State of Nevada is apparently silent on the subject, but the Nevada statute is almost identical in terms with that of Utah. The Nevada court upheld the law upon the theory that under the general police power of the state to enact laws for the protection of the health, safety and welfare of the people, the Legislature had inherent authority to enact the statute.

Another instructive case comes from the Supreme Court of the State of Missouri. (State v. Cantwell, 179 Mo., 245.) It is doubtful whether any of the cases cited may be considered as of controlling authority in the case at bar. The decision arrived at in each appears to be based upon constitutional provisions and statutes peculiar to the jurisdiction where the case arose, and in some the result turned upon the absence of constitutional provisions or statutes of varying shades of inhibition on the question of the eight-hour day. What is the purpose of the statute? What evil was it intended to circumvent? Was it enacted for the purpose of protecting the health and life of miners and laborers in coal mines, or was it a precaution taken to prevent an excessive accumulation of wealth in the hands of persons employed at this occupation? Or was it made a law for the purpose of protecting persons so employed against the unreasonable exactions or anticipated tyranny of employers? The statute was enacted some fifteen years ago. It should be remembered that a very considerable change in coal mining methods has been brought about since then. Section 2586 provides what shall constitute a day's work for coal miners and laborers in coal mines, ex-

cepting cases where it may be necessary to work longer for the protection of property or human life. Section 2587 defines the word "day" where used in a contract between any owner, lessee or operator of any coal mine with any such miner or laborer for his services, as being eight hours. The sections bear a relation to each other, as the words "Any such miner or laborer," used in Section 2587, refer to the "miners and laborers" described in Section 2586, and the two sections when read together will be found to prescribe the terms upon which the owner, lessee or operator of a coal mine may contract with a miner or laborer for his services in a coal mine by the day. The governing idea, as found in the first three sections of the act, is chiefly concerned in fixing the length of the working day in such contracts. The proviso found in Section 2586 carefully provides that where miners or laborers are employed and work to exceed eight hours a day, they shall be paid for the extra time upon the basis of eight hours per day, and Section 2588 provides for the exclusion of the time consumed in going to and returning from work. How then may the provisions of any one or all of these three sections be violated, and by whom? It will be noted that the performance of more than eight hours work by a miner or laborer is not expressly forbidden by the statute, nor made a misdemeanor. Nor is the performance of more than eight hours work in a coal mine made unlawful by any language used in any of the sections referred to. There remains no way then for the statute to be violated, except, possibly, by contracting for work by the day where the day or days are to exceed eight hours in length. If we adopt this view of the case, upon whom is the penalty prescribed in Section 2589 imposed? The terms "miners and laborers" found in Sections 2586-2587 are not included in the section prescribing the penalty, but "his or its agent, employes or servants" are added. The law was clearly enacted to benefit coal miners and laborers. It was not intended to impose additional burdens and hardships upon them. Had it been intended to punish them, it would have

contained some provision describing what would constitute a violation of the statute by them, and a penalty to be imposed for such violation would have expressly included miners and laborers as a class.

*J. J. Rowen, contra.*

The ground, upon which laws limiting the hours of employment in mines have been sustained, is that they are an exercise of the police power of the state, called for by the dangerous and unhealthful nature of the employment, and it may be conceded for the purpose of this argument that in the exercise of the police power, the Legislature may limit the hours of labor in dangerous and unhealthful employments, and may, in that way, interfere with the liberty and curtail the right to contract of those engaged in such employments. Yet any legislation having that effect and seeking the accomplishment of that purpose, must observe the following limitations: (1) There must be due process of law. (2) There must not be a denial of the equal protection of the laws. (Ritchie v. People (Ill.), 40 N. E., 458; Ry. Co. v. Smith, 173 U. S., 684.)

The constitutional guaranty of equal protection does not demand that every person shall possess exactly the same rights or be accorded exactly the same privileges; the constitution contemplates classes of persons upon whom, and upon whom alone, the law may operate, and this guaranty is complied with, if the classification made by the Legislature for legislative purposes is a reasonable one and does not discriminate between those whose conditions and wants are the same. Therefore, the question of the denial of the equal protection of the laws to the coal miners of the state by the present eight-hour law resolves itself into the question whether the legislation limiting the hours of employment in coal mines, and coal mines alone, has observed a proper classification and has embraced all, and excluded none to whom such a law is applicable. (Randolph v. Wood, 49 N. J. L., 88; Johnson v. Ry. Co., 45 N. W., 156 (Minn.); Low v. Print. Co., 59 N. W., 366 (Neb.); State

v. Julow, 129 Mo., 163; State v. Walsh, 35 L. R. A., 231 (Mo.); Sutton v. State, 33 L. R. A., 592 (Tenn.); *Ex parte* Jentzsch, 32 L. R. A., 666 (Cal.); Barbier v. Connolly, 5 Sup. Ct. Rep., 359; Mining Co. v. Penn., 8 Sup. Ct. Rep., 740; Ry. Co. v. Mackey, 8 Sup. Ct. Rep., 1163.)

That the law in question is wanting in that observance of a classification required by the constitution, and amounts to a clear denial to the coal miners of the state of the equal protection of the laws, is clear, because: First, the evil sought to be reached by this law is present in all the mines of the state and the necessity of limiting the hours of employment in the coal mines exists equally in the copper and gold mines and the other kinds of mines. The conditions and the circumstances surrounding the gold miner, the silver miner, the copper miner, and the coal miner are practically the same. Each is compelled to breathe the obnoxious gases arising from the use of explosives and from other causes; each is shut out from daylight and the pure air; each is compelled to work in a place of peril; every consideration for the promotion of the health and safety of the one is equally applicable to the other. (Holden v. Hardy, 46 Pac., 758.) Second, this law, therefore, does not embrace all to whom it is applicable. Third, it excludes many for whom such legislation is as necessary as it is for the coal miner. Fourth, it singles out the coal miner and places burdensome restrictions upon him. Fifth, as stated in State v. Julow, *supra,* the Legislature cannot take a class, subdivide it and then legislate differently for each subdivision. Sixth, as laid down in *Ex parte* Jentzsch, *supra,* there must be a substantial reason why a law is made to operate only on a class and not generally upon all. Seventh, the Legislature can legislate for all miners as a class, but it cannot select coal miners or gold miners, or silver miners, and legislate for that particular kind of miners on matters which affect all miners.

It is a proposition too well established to require any citation of authority that the right to contract is both property and liberty, and if, as we contend, the law in question

operates arbitrarily on the coal miners of the state so as
to deny them the equal protection of the laws, then it also
deprives them of liberty and property without due process
of law. (Freund's Pol. Pow., Sec. 611.)  If the law had
included all mines and all miners in pursuance of Section
1 of Article 19, Wyoming Constitution, any doubt as to
its conformity to that constitution could hardly arise, but
it does not do so.  The constitution in express language
has made a classification for legislative purposes with refer-
ence to mines and the period of labor therein.  The class
for eight-hour legislation for miners is all miners, and
where the constitution itself has for a certain purpose cre-
ated and defined a class, the Legislature in carrying out
that purpose cannot alter or change that classification, but
must effect that purpose with reference to the class as
recognized by the constitution.  We are not unmindful of
the fact that the Supreme Court of the United States in
Holden v. Hardy, 169 U. S., 366; the Supreme Court of
Utah in Holden v. Hardy, 46 Pac., 756; the Supreme Court
of Nevada in *In re* Boyce, 75 Pac., 1, and *Ex parte* Kair,
80 Pac., 463, and the Supreme Court of Missouri in the
case of State v. Cantwell, 78 S. W. Rep., 569, have held
laws limiting the hours of working in mines to eight to be
constitutional, but the laws upheld in the cases cited did
not discriminate in favor of operators.  They embraced all
miners, and, therefore, did not deny to any within the class
of miners the equal protection of the laws, while the Wyo-
ming law embraces only a part of the class of miners and,
therefore, discriminates between those who are in the same
class.  Whatever force or effect the law under discussion
may have respecting the civil rights and liabilities of coal
mine operators and laborers, it wholly fails to meet the
fundamental requirements of a criminal statute.  A pro-
hibition by the common law or by statute is essential to
constitute an act done a crime.  (12 Cyc., 139, 141, 142.)
To constitute a valid penal statute, the same must clearly
define the act or omission declared to be unlawful and ex-
pressly prohibit or command it, as well as prescribe a pen-

alty for its violation. No particular form of words need be used either in defining the offense or in prohibiting it, but it is imperative that the definition and the prohibition be not left to inference or implication. (2 Lewis' Sutherland Stat. Con., 521.)

This law, considered as a penal statute, is just as wanting in fundamental requirements as a sentence would be without a predicate. Where is anything declared to be unlawful? Where is anything prohibited or commanded? What is violated that the offender "shall be fined"? The law says that "eight hours shall constitute a day's work," but nowhere does it say that the working of more than eight hours shall be unlawful; nor does it say that eight hours shall be a lawful day's work, permitting the inference that nine or ten hours would be unlawful. It says that any of the persons specified violating any of its provisions shall be fined; but is this fine to be imposed for working more than eight hours, or for less than eight hours? Or may it be imposed for either? If for either, it certainly compels the coal miner to travel a very narrow path. It is plain that this law nowhere defines any act declared to be unlawful and nowhere prohibits or commands anything, unless a process of reasoning is resorted to and the inference drawn that the Legislature intended that more than eight hours' labor should be unlawful from the fact that it said "eight hours shall constitute a day's work." Such intention, however, can be determined only by resorting to inference or implication, which cannot be done to supply deficiencies and omissions in a penal statute. (2 Lewis' Sutherland Stat. Con., 521; People, &c., v. Phyfe (N. Y.), 19 L. R. A., 141; City v. Gray, 17 Pac., 564 (Mont.)

BEARD, JUSTICE.

An information was filed in the District Court of Sheridan County by the County and Prosecuting Attorney against the defendant, charging, "that Al Thompson, late of the county aforesaid, on the 12th day of March, A. D. 1906, at the County of Sheridan, in the State of Wyoming, being

then and there a coal miner, mining coal, and then and there an employee of the Wyoming Coal Mining Company, the said company being then and there, the owner of the Monarch coal mine situated in Sheridan County, Wyoming, and engaged in mining and extracting coal from said mine, did, while in the employ of the said Wyoming Coal Mining Company, and while mining and extracting coal in said mine, knowingly; wilfully and unlawfully perform in said coal mine, mining coal as aforesaid, on the said 12th day of March, A. D. 1906, more than eight hours of actual labor, to-wit: ten hours of actual labor—the said labor or any portion of the same not being then and there necessary for the protection of property or of human life," * * *

The defendant demurred to the information on the ground "that the said information does not state facts sufficient to constitute an offense punishable by the laws of the State of Wyoming."

The District Court sustained the demurrer, and the County Attorney refusing to amend, and electing to stand on the information, the court rendered judgment dismissing the action and discharging the defendant, to which exceptions were duly taken, and the County Attorney has filed a bill of exceptions in this court under the provisions of Sections 5378-9 and 80, Revised Statutes, 1899.

The provisions of our statutes under which this information was filed are contained in Sections 2586-7-8-9, Revised Statutes, 1899, and are as follows:

"Sec. 2586. Eight hours shall constitute a day's work for all coal miners and laborers now employed, or who may be hereafter employed, in any coal mine in this state, except in cases where it may be necessary to work more than eight hours per calendar day for the protection of property or human life; *Provided,* That in all such cases the miners and laborers so employed and working to exceed eight hours per calendar day shall be paid upon the basis of eight hours constituting a day's work."

"Sec. 2587. In all contracts hereafter made between any owner, lessee or operator of any coal mine, with any such miner or laborer for his services as such, the word day when used shall be construed to be eight hours; *Provided.* That nothing in this chapter contained shall be construed to prohibit or prevent any such owner, lessee or operator from operating his or its coal mine more than eight hours in any twenty-four."

"Sec. 2588. The eight hours in this chapter provided for, shall be construed to mean eight hours of actual labor and shall not include the time consumed in going to and returning from work."

"Sec. 2589. Any owner, lessee or operator, his or its agent, employees or servants, violating any of the provisions of this chapter, shall be fined not less than fifty dollars, nor more than three hundred dollars, or imprisoned not more than three months, or both."

The foregoing quotations contain the entire statute upon the subject; and if the defendant does not come within the class of persons enumerated in Section 2589, then it is clear that the information charges no offense. The first section of the statute enacts that eight hours shall constitute a day's work for all coal miners and laborers employed in any coal mine; but does not attempt to fix the number of hours that shall constitute a day's work for any other class of persons employed in or about the operations of the mine. The second section defines the meaning of the word day when used in any contract made between the owner, lessee or operator of a coal mine with such miner or laborer for his services as such. It is only in contracts between the operators of coal mines, and a miner or laborer in the mine and for his services as such, that the word day is to be construed to be eight hours. Thus it will be seen that by those sections of the act miners and laborers are treated as a distinct class of employees; and it is nowhere in the act declared, in terms, to be unlawful for them to work more than eight hours in any twenty-four. The object of

the statute, we think, was to prevent the employers of such miners and laborers from requiring of them an unreasonable number of hours of work in a calendar day, and to fix the number of hours that should constitute a day's work for such miner or laborer and entitle him to a day's wages; and not to punish the miner or laborer who, as in this case, should voluntarily perform more than eight hours labor in the mine in a calendar day. In a case arising under the statutes of Utah, which are somewhat similar to ours, in which case an employer was prosecuted for unlawfully employing one to work in a mine for the period of ten hours each day, the Supreme Court of the United States quotes and expressly concurs in the language used by the Supreme Court of Utah, as follows: "The Legislature has also recognized the fact, which the experience of legislators in many states has corroborated, that the proprietors of these establishments and their operatives do not stand upon an equality, and that their interests are, to a certain extent, conflicting. The former naturally desire to obtain as much labor as possible from their employees, while the latter are often induced by fear of discharge to conform to regulations which their judgment, fairly exercised, would pronounce to be detrimental to their health or strength. In other words, the proprietors lay down the rules and the laborers are practically constrained to obey them." (Holden v. Hardy, 169 U. S., 366 on 397.) The penalty imposed by the statute is to be inflicted upon "any owner, lessee or operator, his or its agent, employees or servants, violating any of the provisions of this act." We think the persons designated by the words "employees or servants," as used in this section, must be construed as belonging to the same class of persons as those designated by the word "agent" used in the same connection. That is, that class of employees or servants who stand in the place of the owner, lessee or operator of the mine, and who have something to do with employing, superintending or directing the miners and laborers in the performance of their labors.

The Legislature having twice, in the preceding sections of the act, used the terms "miners and laborers," as a class distinct and separate from other employees and servants, it is reasonable to suppose that, if it was the intention to include them in the penal provision, they would have been designated by the same terms, or at least by terms equally unequivocal. It is a rule of construction that a penal statute cannot be extended by implication or construction to persons or things not expressly brought within its terms, nor to cases not within the letter of the statute; and also, that "all doubts as to the construction are resolved in favor of the defendant." (Lewis' Sutherland Stat. Con. (2d Ed.), Sec. 521, and cases cited in notes.)

Construing the several sections of this act together, which must be done in order to arrive at a correct construction of the penal section, we are of the opinion that the words "employees or servants" as therein used were not intended to and do not include the miners and laborers employed in the mine and mentioned in the first two sections of the act; and for that reason, the facts stated in the information in this case, do not constitute a violation of the act in question and that the District Court did not err in sustaining the demurrer. The Attorney General has frankly stated in his brief that, after a careful examination of the question, he has arrived at the same conclusion.

. Counsel have discussed in their briefs the constitutionality of the statute, but as we hold that the information charges no offense under the statute, that question is not properly before us for consideration. The judgment of the District Court is affirmed.                    *Affirmed.*

POTTER, C. J., and SCOTT, J., concur.