UNITED STATES v. MARTIN.

(District Court, N. D. Iowa, W. D.  February 4, 1910.)

No. 1,262.

1. CRIMINAL LAW (§ 89*) — NATURE AND ELEMENTS OF CRIME — OFFENSES AGAINST UNITED STATES.
    There are no common-law offenses against the United States, and the courts of the United States have only such jurisdiction as Congress has conferred on them to try and punish such acts as it shall have previously declared to be crimes and fixed the penalty therefor.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 128; Dec. Dig. § 89.*]

2. CRIMINAL LAW (§ 59*)—AIDERS AND ABETTORS IN MISDEMEANORS—PROSECUTION AS PRINCIPALS.
    The rule that all persons concerned in the commission of misdemeanors if guilty are guilty as principals, and may be indicted, tried and convicted as such, is applicable to statutory misdemeanors, whether the aiders and abettors are referred to in the statute or not.
    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 74; Dec. Dig. § 59.*]

3. CARRIERS (§ 38*) — INTERSTATE COMMERCE LAW — OFFENSES — USE OF FREE PASS.
    Under Interstate Commerce Act June 29, 1906, c. 3591, § 1, 34 Stat. 584, as amended by Act April 13, 1908, c. 143, 35 Stat. 60 (U. S. Comp. St.

Supp. 1909, p. 1151), which makes it a misdemeanor for any common carrier subject to its provisions to issue any free ticket, free pass, or free transportation for passengers, except to persons therein excepted, and further provides that "any person other than the persons excepted in this provision who uses any such interstate free ticket, free pass or free transportation shall be subject to a like penalty," one who, having in his possession an interstate free ticket or pass issued by a railroad company, sells it to another, knowing that he is not the person named therein, and is not entitled to ride thereon, with intent that he shall so use it, which he does by riding free on an interstate journey, is guilty of using the ticket in violation of the statute.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 38.*]

On demurrer to indictment. Overruled

F. F. Faville, U. S. Atty.

J. W. Hallam, for defendant.

REED, District Judge. The indictment charges, in substance, that the defendant in November, 1908, within the jurisdiction of this court, did knowingly and unlawfully aid, assist and abet one F. T. Phillips to violate the act of Congress as amended, commonly known as the "Act to regulate commerce," for that on or about November 6, 1908, the said defendant then had in his possession a certain interstate free ticket or pass which had been issued jointly by the Chicago & Northwestern Railway Company and the Chicago, St. Paul, Minneapolis & Omaha Railway Company to one C. R. Nelson, which pass authorized and provided for the free transportation of said Nelson from Sioux City, in the state of Iowa, to Chicago, in the state of Illinois, and return over the lines of said railway companies; that defendant on or about said date, so having possession of such free pass or free ticket, did unlawfully dispose of and deliver the same to said Phillips for the purpose and with the intent of enabling him, the said Phillips, to travel free thereon over the lines of said railway companies from Sioux City, in the state of Iowa, to Chicago, in the state of Illinois, well knowing that he, the said Phillips, was not the person named in said pass, was not entitled to travel thereon, and was not a person authorized or permitted by said act of Congress to use an interstate free ticket or pass for the purpose of riding free upon either of said lines of railway from Sioux City, in the state of Iowa, to Chicago, in the state of Illinois; that said Phillips after so receiving the same from the defendant did on or about the 6th day of November, 1908, use said ticket and ride thereon free over the said Chicago, St. Paul, Minneapolis & Omaha Railway within this district, as a part of an interstate journey from Sioux City, in the state of Iowa, to the city of Chicago, in the state of Illinois, contrary to and in violation of the said act of Congress.

The demurrer challenges the sufficiency of this indictment upon the ground that the act of Congress upon which it rests only forbids under the penalty prescribed (1) the issuance of an interstate free ticket or free pass by a railway company engaged in interstate commerce to any person not authorized by the act to use such ticket; and (2) the unlawful use of such free ticket or free pass by one not of the class to whom it may be rightly issued by the carrier, that the indictment

charges only a sale by the defendant of the ticket described therein to Phillips, and therefore charges no violation of the act of Congress by the defendant.

The act of Congress under which the indictment is drawn, as amended by Act June 26, 1906, c. 3591, 34 Stat. 584, and chapter 143, Act April 13, 1908, 35 Stat. 60 (U. S. Comp. St. Supp. 1909, p. 1150), provides:

"Section 1. * * * No common carrier subject to the provisions of this Act shall, after January first, nineteen hundred and seven, directly or indirectly issue or give any interstate free ticket, free pass, or free transportation for passengers, except to its employés and their families (and to other persons, particularly specifying them). * * * Any common carrier violating this provision shall be deemed guilty of a misdemeanor and for each offense, on conviction, shall pay to the United States a penalty of not less than one hundred dollars, nor more than two thousand dollars, and any person, other than the persons excepted in this provision, who uses any such free ticket, free pass, or free transportation shall be subject to a like penalty."

It is a misconception of the allegations of the indictment to say that it only charges the defendant with selling to F. T. Phillips an interstate free ticket or free pass that had been issued by the railway companies to one Nelson. The charge is that the defendant, being in possession of a free ticket issued by the railway companies to Nelson, did unlawfully aid, assist, and abet one F. T. Phillips to use the same in violation of the act of Congress by unlawfully disposing of and delivering such ticket to Phillips, well knowing that he, the said Phillips, was not the person to whom said ticket was issued, and was not a person to whom under the act of Congress the railway companies might lawfully issue the ticket, and that Phillips, after so receiving it from the defendant, did unlawfully use the same for the purpose of riding free in this district as a passenger upon a train of one of the companies issuing the ticket as a part of an interstate journey between the city of Sioux City, Iowa, and the city of Chicago, in the state of Illinois, without lawful right to do so, and in violation of the act to regulate commerce. The indictment therefore plainly charges the defendant with using the ticket to aid, assist, and abet Phillips to violate the act of Congress above set forth. Does this charge a crime against the defendant? That there are no common-law offenses, so called, against the United States, and that the courts of the United States have only such jurisdiction as Congress has conferred upon them to try and punish such acts as it shall have previously declared to be crimes against the United States and fixed the penalty for such violations, may be conceded. United States v. Hudson, 7 Cranch, 32, 3 L. Ed. 259; United States v. Hall, 98 U. S. 343–345, 25 L. Ed. 180; United States v. Eaton, 144 U. S. 677–687, 12 Sup. Ct. 764, 36 L. Ed. 591.

But the Congress has declared by the act to regulate commerce that the use by any person other than one excepted from its provisions of an interstate free ticket or free pass issued by a common carrier engaged in interstate commerce shall be guilty of a misdemeanor and suffer the penalty prescribed therefor. It is true that it is only the carrier who issues or the person who uses the ticket in violation of the act that commits the offense, and the question arises: What constitutes an unlawful use, within the meaning of the act, of a free ticket law-

fully issued by the carrier? The contention of the defendant is that it is the use of the ticket only for the purpose of riding as a passenger in an interstate journey without payment of fare to the carrier, and that the person so using it alone commits the offense, and, inasmuch as the act does not forbid the aiding or abetting in such a use, that one knowingly and intentionally so aiding and abetting commits no offense. Undoubtedly the use of the ticket for the purpose of riding as a passenger without compensation to the carrier in an interstate journey upon the line of the carrier issuing it by one not authorized to so ride is necessary to complete the offense. But does such riding alone constitute the use of the ticket denounced by the act? If so, why was not the use expressly limited to that of riding as a passenger without payment of fare to the carrier? Instead the language of the act is: "And any person * * * who uses any such free ticket shall be subject to a like penalty." But how use it? This language not only restricts the use of the ticket for the purpose of riding free as a passenger upon the line of the carrier in an interstate journey, but it is sufficiently broad to forbid its use by any person for the purpose of so riding, or for the purpose of aiding, assisting, or abetting another to so ride who under the act is not authorized to ride free, and the statute is obviously intended to so forbid. While penal statutes are not to be enlarged by implication or extended to cases not fairly within their meaning, the rule is firmly settled that they must be given a sensible interpretation, and one not so narrow as to defeat the obvious intention of the Legislature. United States v. Lacher, 134 U. S. 624–628, 629, 10 Sup. Ct. 625, 33 L. Ed. 1080. At common law participants in the commission of the higher grades of felony were early classified as principals and accessories, the designation being as follows: (1) Those who actually perpetrate the crime as principals; (2) those present at its commission and aiding or abetting therein, as accessories at the fact, or as principals in the second degree; (3) those not actually present, and participating in its perpetration, but who had previously advised, counseled, or encouraged the commission, as accessories before the fact; and (4) those having no connection with its perpetration, but who thereafter, and, knowing of its commission, aid or abet the felon to escape punishment, as accessories after the fact; and it was required that accessories before or after the fact, as the case might be, must be indicted and tried as such, and could only be convicted after the conviction of the principal. 4 Black. Com. 35; 1 Arch. Cr. Pr. & Pl. 55 (Pomeroy's Notes). But these rules were never applicable in cases of treason, misdemeanor, or in any of the crimes below the grade of felony; and all persons concerned in the commission of such crimes, if guilty, were deemed guilty as principals, and might be indicted, tried, and convicted as such. 4 Black. Com. 36; 1 Arch. Cr. Pr. & Pl. 66; Whart. Cr. Law, § 233 et seq.; McClain's Cr. Law. § 210; United States v. Gooding, 12 Wheat. 460–475, 6 L. Ed. 693; United States v. Mills, 7 Pet. 138, 8 L. Ed. 636; Bliss v. United States, 44 C. C. A. 324, and note (105 Fed. 508); Pearce v. Oklahoma, 55 C. C. A. 550 (118 Fed. 425); United States v. VanSchaick (C. C.) 134 Fed. 592–601, 602; United States v. Williams (D. C.) 159 Fed. 310. And this is true in statutory

misdemeanors, whether the aiders and abettors are referred to in the statute or not. United States v. Bayer, 4 Dill. 407, Fed. Cas. No. 14,548; United States v. Snyder (C. C.) 14 Fed. 554.

In United States v. Gooding, 12 Wheat. 460–475, 6 L. Ed. 693, above, it is said:

"The. fifth instruction turns upon a doctrine applicable to principal and accessory in cases of felony, either at the common law or by statute. The present is the case of a misdemeanor, and the doctrine therefore cannot be applied to it; for in cases of misdemeanor all those who are concerned in aiding and abetting, as well as in perpetrating the act. are principals. Under such circumstances, there is no room for the question of actual or constructive presence or absence; for, whether present or absent, all are principals. They may be indicted and punished accordingly. Nor is the trial or conviction of an actor indispensable to furnish a right to try the person who aids or abets the act. Each in the eye of the law is deemed guilty as a principal."

It must be presumed that Congress, when it declared the offense described in its act above quoted to be a misdemeanor, intended that all who should aid or abet in the commission of that offense might be charged and tried as principals, regardless of the rules of the common law applicable in cases of felony.

This indictment does not charge that the free ticket or pass was unlawfully issued by the railway companies, nor how the defendant obtained possession thereof. Presumptively the ticket was rightly issued by the railway companies, and from the argument at the bar the inference is that it was in some manner obtained by defendant as a ticket broker; but, however this may be, when it is charged that the defendant having possession of such ticket and knowing that Phillips was not the person in whose favor it was issued, but was a person not authorized to use the same, and unlawfully delivered it to him for the purpose of enabling him to use the same in violation of the act, and that Phillips did so use the same, the defendant is sufficiently charged with the offense denounced by this act.

The conclusion therefore is that the demurrer should be overruled; and it is accordingly so ordered.