STATE v. WEEKLEY, ET AL.
(No. 1555; March 5, 1929; 275 Pac. 122)

164

*Clarence G. Cypraensen,* for appellant.

*William O. Wilson,* Attorney General; *James A. Green-wood,* Deputy Attorney General, and *Philip S. Garbutt,* Assistant Attorney General, for respondent.

RINER, Justice.

Appellants Gordon Weekley and Jake Scott, hereinafter referred to as defendants, were convicted in the District Court in Natrona County of unlawful possession of intoxicating liquor, to-wit whiskey containing one-half of one per cent or more of alcohol by volume and fit for use for beverage purposes. From the judgments entered against them, they bring the record here for review by direct appeal.

The material facts of the cause put in evidence are substantially these: Sometime after one o'clock in the morning of September 6, 1927, several law enforcement officers, including the undersheriff of Natrona County and the chief of police of the City of Casper, went in an auto to a building called the Night and Day Cafe on West A Street in said city, which conducted its business at all hours, as indicated by its name. As they approached the cafe, Denny, one of the officers, got out of the car, spoke to two boys who were standing across the street from the cafe, and inquired of them where he could buy a drink. They agreed to take him over to the cafe, and as the three entered the door, the defendant Weekley stationed there made a search of Denny's person, discovered that the latter carried a gun and immediately forbade his entrance. Thereupon the two boys fled. The officer, being already inside the door, disregarded Weekley's command and proceeded on to the inner room, being followed shortly thereafter by the rest of his party. Denny testified that as he got about half way from the door to the bar in the inside room, Weekley pressed a button in the door casing and he heard a buzzer ring behind the bar. Another of the officers testified on cross-examination that he also heard the buzzer ring. A third officer stated on the witness stand, without objection: "I am told a buzzer was there; I have heard it; never could locate it." Denny also testified that as he entered the inner room, a young man was taking a drink from a whisky glass; that the other defendant, Jake Scott, was

behind the bar serving a drink from a white graniteware pitcher, and thereupon witness jumped over the bar and in doing so spilled some water from a slop bucket standing back of the bar upon the floor; that as he did this, defendant Scott poured out upon the floor a fluid which was yellowish brown in color and which smelled like whisky; on cross-examination the witness stated that a few drops of whisky were left in the pitcher. The other officers were by this time present and one handed a cloth to Denny, who mopped up the liquid on the floor, wrung out the cloth and so preserved the spilled liquid in a bottle. The testimony seems to be undisputed that the slop bucket contained lye water. When the liquid in the bottle was analyzed by an expert chemist, he found it to contain four and eight-tenths percentum pure alcohol; he also testified of his finding in the liquid some caustic in solution, that lye was a caustic, alkaline in character, and that some alkali had come in contact with the fluid; that with such alkali present, the fluid was ruined as a beverage. The defendants each took the witness stand and denied that there was any intoxicating liquor on the premises; they denied also that there was any buzzer system, and the defendant Scott stated that he had ice water in the pitcher which he spilled on the floor when officer Denny jumped over the counter. Scott also said that some of the water was left in the pitcher. Several of the officers testified that the few drops of the liquid left in the pitcher were brown in color.

It is argued to secure a reversal of the judgments that "the evidence is insufficient to show that the liquor or compound in question was capable of being used as a beverage." This contention quite overlooks the testimony in the case taken in its entirety, from which, as we think, the jury were justified in finding that the liquid poured out on the floor by the defendant Scott was whiskey, and so intoxicating liquor fit for beverage purposes.

In People v. Berglin, 309 Ill. 488, 141 N. E. 295, which was a prosecution for the possession and sale of intoxicating liquor, it appeared that officers, after knocking for admittance and before entering to search defendant's house, heard someone inside say they were pouring the stuff out. Upon gaining admittance, defendant and his wife were found there and in the bathroom were discovered two jugs and a funnel, there was the smell of whisky in the room and the jugs also smelled of whisky. The officers dipped the contents of the toilet into some bottles and subsequent analysis showed that the fluid contained nine percentum or more of alcohol. Defendant denied possessing any intoxicating liquor. In the course of an opinion which affirmed a conviction, this language was used:

"The principal error complained of in the admission of the testimony was the admission of the testimony of the chemist as to the alcohol contained in the two bottles, the contents of which were dipped from the toilet stool. It is argued that the prohibition is against any liquid containing one-half of one per cent or more of alcohol by volume which is fit for use for beverage purposes. It is insisted there was no proof the contents of the bottles were fit for use for beverage purposes, and the testimony should not have been permitted. We think this so obvious a misapprehension under the proof in this case as not to require discussion."

See also State v. Kiely, 255 S. W. (Mo. App.) 343.

It is also suggested that the defendants were merely the agents or employees of the actual proprietors of the place, who were not present, and that "if intoxicating liquor had been in the place of defendants' employers, this would not constitute possession by the said employees." Several cases are cited, but we do not deem them in point upon the facts shown by the record under consideration. In Timell v. United States, 5 Fed. (2d), C. C. A., 9th Cir. 901, where a requested instruction was held properly refused below, the reviewing court in discussing it say:

"It was clearly erroneous in assuming that one who has liquor in his possession must be acquitted of the charge of unlawful possession, if he can prove that possession was merely as the agent of another. The doctrine of agency is not applicable to such a case. State v. Caswell, 2 Humph. (Tenn.) 399; State v. Chauvin, 231 Mo. 31, 132 S. W. 243, Ann. Cas. 1912A, 992; State v. Bugbee, 22 Vt. 32."

In Speybroeck v. State, 198 Ind. 683, 155 N. E. 817, this language, concerning the point we are now considering, appears in the opinion:

"But in the instant case appellant exercised more than mere temporary control over the pitcher of liquor. His partially successful attempt to destroy it was an exercise of exclusive and permanent dominion and control which amounted to possession, regardless of its ownership. Under Section 2750, Burns' 1926, Section 35, Acts 1925, p. 144, c. 48, there is no enforceable property right in illicit moonshine whisky or in its container, and it might be argued that appellant, in attempting to destroy the whisky was doing a lawful thing, but, since appellant's attempt was performed in an endeavor to outwit the officers of the law, such an argument could not be seriously considered, and his act of attempted destruction only confirms the fact of his possession. If it was not his liquor, he could have kept out of trouble by leaving it alone." See also State v. Peters, 72 Mont. 12, 231 Pac. 392.

Other additional authorities could be cited to the same effect as those just quoted from, but we believe these are sufficient to make it clear that this contention of defendants is unsound when sought to be applied here.

At the argument of the case, the question was raised as to the status of the defendant Weekley, the man who was stationed at the door of the cafe, and who, according to the State's testimony, undertook to warn the defendant Scott of the approach of the officers. Our Criminal Code, in Sections 7322, 7323, W. C. S. 1920, deals with the definition and punishment of accessories before and after the fact, as regards felonies, the first of these sections providing, among other things, that: "Every person who shall

aid or abet in the commission of any felony &ast; &ast; &ast; shall be deemed an accessory before the fact and may be indicted, informed against, tried and convicted in the same manner as if he were the principal,'' and shall suffer the same punishment. Nothing is said in these sections of the statutes concerning misdemeanors and hence the rule of the common law relative to the lower grade of offense will prevail in such matters. Sec. 4547, W. C. S. 1920. In United States v. Martin, (D. C.) 176 Fed. 110, the court, after discussing the common law classification of participants in commission of the higher grades of felonies as principals and accessories, stated the rule thus:

"But these rules were never applicable in cases of treason, misdemeanor, or in any of the crimes below the grade of felony; and all persons concerned in the commission of such crimes, if guilty, were deemed guilty as principals, and might be indicted, tried, and convicted as such. 4 Black. Com. 36; 1 Arch. Cr. Pr. & Pl. 66; Whart. Cr. Law, Sec. 233 et seq.; McClain's Cr. Law, Sec. 210; United States v. Gooding, 12 Wheat., 460-475, 6 L. Ed. 693; United States v. Mills, 7 Pet. 138, 8 L. Ed. 636; Bliss v. United States, 44 C. C. A. 324, and note 105 Fed. 508; Pearce v. Oklahoma, 55 C. C. A. 550, 118 Fed. 425; United States v. Van Schaick, (C. C.) 134 Fed. 592-601, 602; United States v. Williams, (D. C.) 159 Fed. 310. And this is true in statutory misdemeanors, whether the aiders and abettors are referred to in the statute or not. United States v. Bayer, 4 Dill. 407, Fed. Cas. No. 14, 548, 14, 547; United States v. Snyder, (C. C.) 14 Fed. 554.

"In United States v. Gooding, 12 Wheat. 460-475, 6 L. Ed. 693, above, it is said:

" 'The fifth instruction turns upon a doctrine applicable to principal and accessory in cases of felony, either at the common law or by statute. The present is the case of a misdemeanor, and the doctrine therefore cannot be applied to it; for in cases of misdemeanor all those who are concerned in aiding and abetting, as well as in perpetrating the act, are principals. Under such circumstances, there is no room for the question of actual or constructive presence or absence; for, whether present or absent, all are principals. They may be indicted and punished accordingly. Nor is the trial or conviction of an actor in-

dispensable to furnish a right to try the person who aids or abets the act. Each in the eye of the law is deemed guilty as a principal.''

In Stratton v. State, 45 Ind. 468, the Supreme Court of Indiana, from which commonwealth a substantial part of our Criminal Code is taken, said this:

''We think the learned counsel is correct in the first branch of this proposition, that is, that there can be no accessories, either before or after the fact, in misdemeanors, but incorrect in the last, that is, that if the person so charged is not present and in some way assisting in the offense, or ready to assist in it, so as thereby to become a principal, he is not guilty of any offense known to the law, though he may, prior to the act and away from the place, have hired or directed another person to commit it. There are no accessories in misdemeanors, but those who are at all guilty are guilty in the same degree. It is said by Mr. Bishop, that 'the authorities concur, that, in misdemeanor, there are no accessories either in name or in the order of the prosecution. When a man, therefore, stands in such a relation to a misdemeanor as in felony makes one an accessory before the fact, if what he does is of sufficient magnitude to be noticed by the law, he is to be treated as a principal; the indictment charges him as such, and, unless the pleader chooses, it does not mention that the act was performed by the hand of another; and he may be proceeded against either in advance of the doer, or afterward, or jointly with him.' ''

To the same effect is Wagner v. State, 43 Nebr. 1, 61 N. W. 85, where the court said:

''It is also true that in misdemeanors there are no accessories. This rule does not mean that one conducting himself in such a manner that if the principal offense were a felony he would be an accessory is not punishable at all, if the offense be a misdemeanor, but it means that in misdemeanors the law does not distinguish between principals and accessories, and that all who participate, whether present or absent when the crime is committed, are alike guilty as principals. Wharton, Criminal Law, 223. This is true

whether the offense is one at common law or whether it is one created by statute. Stratton v. State, 45 Ind. 466; Lowenstein v. People, 54 Barb. (N. Y.) 299.''

And in Jackson v. State, 154 Ga. 544, 114 S. E. 811, after quoting from its previous decisions that:

'' 'The rule of the common law that in misdemeanors there are no accessories before the fact, but that all who would be such in felonies are principals in misdemeanors, is still of force in Georgia.' Kinnebrew v. State, 80 Ga. 232, 5 S. E. 56; Parmer v. State, 91 Ga. 152, 16 S. E. 937; Slaughter v. State, 113 Ga. 284, 38 S. E. 854, 84 Am. St. Rep. 242,''

the Supreme Court of Georgia further remarked:

''To have, control, or possess contraband liquor in this state is a misdemeanor. Acts Ex. Sess. 1917, p. 8. And all who may be concerned in the commission of such offense are principals.''

It seems to be well settled that keeping watch while a crime is being perpetrated so as to facilitate the escape of a party actually committing it or to prevent his being interrupted is an aiding and abetting which constitutes him a principal, under the rules above mentioned. People v. Courtney, 307 Ill. 441, 138 N. E. 857; 16 C. J. 133. The Supreme Court of Iowa shortly states the rule thus, in the case of State v. Berger, 121 Iowa 581, 96 N. W. 1094:

''Every person who is present at the commission of a crime for the purpose of assisting in its accomplishment, either by performing the principal felonious act, or by standing watch or by waiting in reserve, ready to render such aid as may be necessary to the success of the common criminal purpose, is a principal, both at common law and under the statute, even though he takes no other part in the unlawful transaction.''

While the case of State v. Killian, 178 N. Car. 753, 101 S. E. 109, was reversed on other grounds, and there was dissent as to the reversal, yet the court was unanimous in holding that the trial judge was correct in overruling defendant's motion to dismiss the proceedings against him. The following excerpts taken from both the prevailing and dissenting opinions on the point pertinent to the case at bar as regards the defendant Weekley's status, show substantially the facts of the cited case and the law applied by the court. In the prevailing opinion it was said:

"We think the motion to dismiss was properly overruled. We think there is some evidence sufficient to go to the jury that the defendant knew of the existence of the still and fired a gun in order to give warning to the distillers. While the evidence is not very strong, we think the jury may infer from all the surroundings as to what was the purpose of the defendant in firing the gun. If his purpose was to aid and abet the distillers and to enable them to escape, the defendant would be an accessory and equally guilty with the principals."

And the other members of the court, whose view was presented by the chief justice, had this to say in part:

"There was ample evidence justifying the court in submitting the case to the jury. It needs no authority in this state that one who aids and abets in a misdemeanor can be convicted of the offense charged in the bill. In State v. Horner, 174 N. C. 792, 94 S. E. 292, it is said:

" 'It makes no difference whether defendant was a principal in the first degree or in the second degree as an aider and abettor. The latter is but a lower grade of the principal offense, viz., the distilling or manufacturing of the liquor. An aider and abettor is denominated in the books as a principal in the second degree.'

"In State v. Ogleston, 177 N. C. 542, 98 S. E. 537, Allen, J., charged the jury:

" 'Under this act  *   *   *   notwithstanding the charge is for the manufacture of spirituous liquors, you can convict either of the defendants for aiding and abetting the manufacturing of spirituous liquors.'

"This charge was sustained by the court.  *   *   *

"There were many additional circumstances from which the jury could infer that the aiding and abetting had existed prior to the time. The sheriff, when he went up by the rear of the defendant's store in passing around the corner, saw the gun standing there, and the defendant, who was near by, went to the house, got the gun, and went by a short cut in the direction of the still. The sheriff heard the gun fire, saw the smoke from the gun, and defendant unbreaching his gun. He saw him fire the gun again, though he was not shooting at anything. The sheriff then went to the still, and found fire still in the furnace and everything as if running, except that the still itself was taken out and gone. This evidence was sufficient to submit to the jury the question whether the defendant had previous knowledge of the illicit manufacturing of liquor and was under an agreement to give warning of the approach of officers. If not, why did he have his gun ready at hand, and why did he go by a short cut near the distillery and give notice by firing his gun off twice and then hide his gun and go back that night secretly to get it? To any reasonable man there can be but one inference, and that is that there was preconcert between him and the parties actually running the still, for they left the still 'with the fire in the furnace, and he found everything as if running, except that the still was taken out and was gone.' There was therefore ample evidence from which the jury could draw the inference that the defendant within two years prior to that particular moment had been engaged, or was aiding or abetting those who were engaged, in running this illicit distillery."

In the case before us there was evidence from which the jury could infer, as they did, that the defendant Weekley was stationed at the door of the cafe to warn, and that he did warn, the other defendant Scott, so that the latter made endeavor to avoid being caught in the act of possessing intoxicating liquor. In that view of the matter, Weekley was properly regarded as a principal. The credibility of

the witnesses and the conflicts in their testimony were, of course, problems peculiarly to be resolved by the jury. Having found against defendants in those respects upon supporting evidence in the record, we cannot, under familiar rules of appellate practice, interfere with their verdict.

Our conclusion being that there is no error in the record under consideration, the judgments should be and are, accordingly, affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.