In the Matter of the Application of David M. Goldsmith for a Writ of Habeas Corpus.

**David M. GOLDSMITH, Plaintiff-Petitioner,**

v.

**Lawrence CHENEY, Sheriff of Teton County, Wyoming, Defendant.**

No. 3857.

Supreme Court of Wyoming.

April 30, 1970.

Daniel P. Svilar, of Boyer & Svilar, Lander, for plaintiff-petitioner.

James E. Barrett, Atty. Gen., Cheyenne, Richard A. Stacy, Frederic C. Reed, Asst. Attys. Gen., Cheyenne, for defendant.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice PARKER delivered the opinion of the court.

David M. Goldsmith, charged jointly with three other defendants under § 6-14, W.S. 1957, with joining in common design to kill Larry Olinger and held under a warrant issued by reason of the complaint, has petitioned this court for a writ of habeas corpus after a similar request had been denied by the trial court of Teton County. Under a stipulation of counsel the relevant facts are that:

Petitioner was arrested in Teton County, January 19, 1968, upon a fugitive warrant issued from Nevada where he, Ted Linn, Glen Lucas, and Robert Lindblad were all charged with having murdered Robert Stucker and Larry Olinger in Nevada on or about August 22, 1967; petitioner was not in the State of Nevada at the time Stucker and Olinger were killed nor had he been there at any time during 1967 prior to the deaths; following his arrest, petitioner was transferred to the Fremont County Jail in Lander; he unsuccessfully filed habeas corpus proceedings before the district court and later in this court; he was thereafter extradited to Nevada; on May 28, 1968, the State of Nevada filed an information in Lyon County District Court against petitioner containing two counts of murder of Robert Stucker and Larry Olinger; on April 5, 1969, Glen Lucas, likewise charged as co-defendant with Goldsmith in the two

murders, was tried before a jury in Clark County, Nevada, and found not guilty on both counts; the parties hereto agree Robert Stucker and Larry Olinger were killed in the State of Nevada and buried in a grave in Lyon County, Nevada, and that co-defendant Robert Lindblad admitted under oath in the trial against Glen Lucas that he killed either Larry Olinger or Robert Stucker; the case of the State of Nevada against Ted Linn, charging him with first degree murder of Robert Stucker and Larry Olinger, was tried and resulted in a conviction of Linn as charged but thereafter the trial judge granted him a new trial on the ground that the State had failed to furnish certain information ordered by the court to be divulged; for some time he awaited trial but the charges against him have now been dismissed; Goldsmith had been in jail until June 25, 1969, when the prosecutor of Lyon County, Nevada, filed an amended information, charging him with the crime of conspiracy, a gross misdemeanor, simultaneously dismissing the two counts of murder against him, and Goldsmith entered a plea of nolo contendere which was accepted by the district judge, who then released Goldsmith on his own recognizance to appear for sentencing on July 9, 1969; on July 8, 1969, the Nevada Attorney General filed a motion to set aside the amended information and reinstate the charges of murder against Goldsmith but upon argument the motion was denied and the court dismissed the murder charges, accepted the plea of Goldsmith, and committed him to Lyon County Jail for a term of one year—the execution of the sentence being commuted to the time served, Goldsmith having been confined in excess of one year—and he was discharged from custody; and the Nevada laws provided:

"171.070 *Conviction or acquittal in another state a bar where jurisdiction is concurrent.* When an act charged as a public offense is within the jurisdiction of another state, territory or country, as well as of this state, a conviction or acquittal thereof in the former state is a bar to the prosecution or indictment therefor in this state. (1911 Cr.Prac. § 69; RL § 6919; NCL § 10717.)"

"178.562 * * * 1. An order for the dismissal of the action, as provided in NRS 178.554 and 178.556, shall be a bar to another prosecution for the same offense. * * *"

Petitioner's argued basis for discharge from custody can be summarized as follows:

1. The trial judge failed to set out his reasons for denying the petition as is required by § 1–817, W.S.1957.

2. Petitioner's plea of nolo contendere to the charge of conspiracy in Nevada and the dismissal of the charges against him of murdering Larry Olinger constitute double jeopardy in violation of the Fifth Amendment of the Constitution of the United States; Wyoming must give full faith and credit to the Nevada law which provided that if an order of dismissal is entered in the case it must bar another prosecution for the same offense.

3. The acquittal of Glen Lucas as principal constitutes a good defense for Goldsmith to the charge of being an accessory before the fact.

4. The criminal complaint charges Ted Linn, Glen Lucas, Robert Lindblad, and petitioner as being accessories before the fact of the murder of Larry Olinger in Nevada in violation of § 6–14, W.S.1957. This section does not apply to felonies committed outside the State of Wyoming, hence the Teton County District Court has no jurisdiction to try the case.

We find the first three points argued by petitioner to be without merit for reasons which we will list, but the argument is so tenuous as to warrant no more than cursory mention.

1. Although the record from the trial court shows no statement by the court of reasons for disallowance of the writ of habeas corpus as is mandatory under §

1–817, W.S.1957,[1] and the failure to provide the reasons is condemned, the matter now before us is not an appeal, and the propriety of the trial court's actions at that time has no bearing on the merit of the petition for habeas corpus.

■■ 2. Since petitioner's nolo contendere plea in Nevada related to a charge different than that under which he is held in Wyoming, the double jeopardy cannot be an issue. The mentioned clause of the Fifth Amendment, which provides that no person shall be subject for the same offense to be twice put in jeopardy of life or limb, being designed to prohibit double jeopardy as well as double punishment, is not properly invoked to bar a second prosecution unless the "same offense" is involved in both the first and second trial. United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed. 2d 627, 633; 22 C.J.S. Criminal Law § 278 (1), p. 719. The same reasoning applies to petitioner's argument that Wyoming must give full faith and credit to the Nevada law relating to dismissal of the charge.

3. Even were we to assume for the purpose of discussion that the acquittal of the principal constitutes a good defense, it would be unnecessary to consider any effect Lucas's being found not guilty of the murder of Larry Olinger by a Nevada court might have upon the status of Goldsmith under the Wyoming charge since Lindblad was charged in Teton County along with petitioner and so far as the record shows he still stands charged with murder in the State of Nevada and his case has had no disposition.

■■ 4. From what has been said, it follows that there is only one real issue presented in the case, that is, whether § 6–14, under which petitioner stands charged, applies to felonies committed outside the State of Wyoming.[2] Petitioner contends that:

"* * * the language 'any felony' refers only to felonies committed in Wyoming and not in other states. Since Wyoming has no statute incorporating specific references to felonies committed in other states, the Teton County District Court is without jurisdiction to try the case.

"The Wyoming legislature has the power to incorporate, by reference, offenses of other states into the Wyoming penal statutes. * * * Such incorporation does not follow merely because the legislature has the power to do so. The legislature must not only intend to incorporate by reference, but also must use appropriate language evidencing its intent."

Counsel for petitioner cites no authorities tending to directly substantiate this position but instead seems to argue that because certain other states have worded their accessory statutes to punish the aiding, abetting, etc., of the commission of a felony "in any state," "outside the State," "elsewhere," and so forth, that such wording is essential. Although the circumstances that the legislatures of numerous other states have seen fit to clarify the question of jurisdiction beyond argument in this technical area of the law may be a commentary upon an oversight by our lawmakers, it falls short of convincing us that Wyoming has no jurisdiction to try an accessory before the fact when the commission of the felony is outside its borders. Analysis of the entire problem indicates to the contrary.

1. Section 1–817: "Reasons to be assigned for disallowance.—If the writ is disallowed, the court or judge shall cause the reasons of said disallowance to be appended to the petition, and returned to the person applying for the writ."

2. Section 6–14: "Accessory before the fact. —Every person who shall aid or abet in the commission of any felony, or who shall counsel, encourage, hire, command, or otherwise procure such felony to be committed, shall be deemed an accessory before the fact, and may be indicted, informed against, tried and convicted in the same manner as if he were a principal, and either before or after the principal offender is convicted or indicted or informed against; and upon such conviction he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal."

The common law of England has been by statute adopted as a rule of decision in this State, § 8–17, W.S.1957; and statutes are to be construed in harmony with existing law and their meaning determined in the light of the common law. Civic Ass'n of Wyoming v. Railway Motor Fuels, Inc., 57 Wyo. 213, 116 P.2d 236, 245; 82 C.J.S. Statutes § 363; 3 Sutherland, Statutory Construction, § 5301 (3 ed.). Anciently, at common law uncertainty developed as to whether an indictment against an accessory before the fact could be in the county of the enticement or in that of the accomplished felony. 1 Bishop, New Criminal Procedure § 58 (2 ed.); 1 Chitty, Criminal Law, 273 (5 ed.). This problem along with that of murders and felonies committed in several counties was clarified by the lawmakers in the English 2 and 3 of Edw. VI, c. 24 (1548):

"Forasmuch as the most necessary office and duty of the law is to preserve and save the life of man, and condignly to punish such persons that unlawfully and wilfully murder, slay or destroy men, and also that another office and duty of law is to punish robbers and thieves, which daily endeavour themselves to rob and steal, or give assistance to the same, and yet by craft and cautele do escape from the same without punishment:

\*     \*     \*     \*     \*     \*

"IV. \* \* \* be it enacted by authority aforesaid, That where any murder or felony hereafter shall be committed and done in one county, and another person or more shall be accessary or accessaries in any manner or wise to any such murder or felony in any other county, that then an indictment found or taken against such accessary and accessaries upon the circumstance of such matter before the justices of the peace, or other justices or commissioners, to enquire of felonies in the county where such offences of accessary or accessaries in any manner of wise shall be committed or done, shall be as good and effectual in the law, as if the said principal offence had been committed or done, within the same county where the same indictment against such accessary shall be found \* \* \*."

We inherited this common law and by statute specifically adopted it, thereby making it the background for interpretation of our laws, including § 6–14 here in issue. By decisions of this Nation's courts in cases dealing with felonies in which the preparations occurred in one state and the actual felony in another, it has been held, consistent with the common law rule, that absent a statute which provides otherwise an accessory before the fact may be tried where the accessorial act took place and only there. United States v. Gillette, 2 Cir., 189 F.2d 449, 451; People v. Hall, 57 How.Pr., N.Y., 342, 348; State v. Chapin, 17 Ark. 561, 566; State v. Wyckoff, 31 N. J.L. 65, 69–70. Such interpretations are correct, and accordingly, the petition for writ of habeas corpus must be dismissed.

Dismissed.

Mr. Chief Justice GRAY, dissenting.

It is my view that disposition of the question of jurisdiction renders unnecessary discussion of other points raised by the petitioner. The majority, in disposing of the question of jurisdiction, has in my opinion invoked an anachronism of the common law that forms no part of the body of law of this state insofar as it is said to relate to jurisdiction rather than venue. The common-law rule was a rule of necessity that grew out of subtle niceties made in felony cases between principals and accessories before the fact in order that such accessories not present in the jurisdiction where the felony such as murder was actually committed would not go unpunished. That distinction was removed by the legislature of this state both before and after statehood and no recent authority has come to my attention indicating resort to the doctrine under the circumstances presented in this case. The significance of the removal of the distinction lies in the fact that under common law no distinction was made between principals and accessories in cases involving misdemeanors. All participants were considered as principals and could be

proceeded against as such. State v. Weekley, 40 Wyo. 162, 275 P. 122, 64 A.L.R. 420. Consequently when the distinction in felony cases was removed the commission of a felony was on the same plane as the commission of a misdemeanor and as a result such a perpetrator was punishable where the felony occurred, whether a principal or an accessory, Annotation 42 A.L.R. 272, 277–278.

Furthermore, if the common-law rule were applicable in this jurisdiction we were obviously in error when we declined to issue a writ of habeas corpus in an original proceeding brought here previously by Goldsmith in Case No. 3699 (unreported). In that case the facts were that Goldsmith, along with Linn, Lucas and Lindblad, was charged by the State of Nevada as a principal for the murder in that state of Stucker and Olinger. One of the points relied upon by Goldsmith was that Nevada had no jurisdiction over Goldsmith inasmuch as he was only an accessory before the fact, and in connection with that point it was stipulated that Goldsmith was not present in Nevada before or at the time of the murders. Nevertheless, we unanimously and summarily rejected that contention, and I think properly so. Clearly Nevada under our law and the law of Nevada had jurisdiction of the entire transaction and of the criminal offenses growing out of that transaction. When Nevada acquired jurisdiction of the persons of the participants therein, which it did, their jurisdiction was complete.

It is also my view that the majority by extending the reach of § 6–14 to embrace a felony committed beyond the borders of this state has violated a fundamental rule of construction of a criminal statute. The rule of strict construction must be applied and no statute is to "be extended by implication or construction to persons or things not expressly brought within its terms, nor to cases not within the letter of the statute; and also that 'all doubts as to the construction are resolved in favor of the defendant,'" State v. Thompson, 15 Wyo. 136, 87

P. 433, 434. Certainly it must be conceded as a general proposition that our criminal laws do not reach a crime committed beyond the borders of this state. Unlike statutes in several other states, as mentioned in the majority opinion, the statute here under consideration does not purport to make it a crime under Wyoming law to aid and abet the commission of a felony in any other state. Although the statute embraces such elements as counselling, encouraging, hiring or otherwise procuring the commission of a felony, it is not a criminal conspiracy statute wherein the crime is held to have been consummated when the conspirators reach agreement to commit a felony in this or any other state. See State v. Goldberg, 261 N.C. 181, 134 S.E.2d 334, 348, certiorari denied 377 U.S. 978, 84 S.Ct. 1884, 12 L.Ed. 2d 747. This, I think, was made manifest by the adoption in 1969 of a Criminal Conspiracy Statute, § 1, Ch. 164, Session Laws of Wyoming, 1969 (§ 6–16.1, W.S.1957, 1969 Cum.Supp.). This statute clearly and specifically makes it a crime to conspire to commit an act which constitutes a felony under the laws of this state whether the felony is committed in Wyoming or beyond the borders of this state. Keeping in mind that the conspiracy here was alleged to have been entered into in late 1967 and the matter was before this court in No. 3699 in April 1968, can it fairly be questioned that the legislature in 1969 was aware of the doubt cast upon the reach of § 6–14, the aiding and abetting statute, to confer jurisdiction upon the courts of this state to try participants in a conspiracy entered into in this state for commission of a felony in another state? I think not, Equitable Life Assur. Soc. of the United States v. Thulemeyer, 49 Wyo. 63, 52 P.2d 1223, rehearing denied 54 P.2d 896, 897, appeal dismissed Ham v. Equitable Life Assur. Soc. of U.S., 299 U.S. 505, 57 S.Ct. 24, 81 L.Ed. 375. As a matter of statutory construction, if the legislature had doubt in such a serious matter we ought to concur, Equitable Life Assur. Soc. of the United States v. Thulemeyer, supra, 52 P.2d at 1234. Otherwise

we in effect would be holding, as the majority is doing in substance, that the legislature engaged in an exercise of futility.

I would order petitioner's release.