AUGUST SEIBERT, Respondent, *v.* JOHN S. CAVENDER, Appellant.

March 5, 1877.

1. Under section 18, article 8, St. Louis Charter of 1870, it is not necessary to the validity of an ordinance which provides for the improvement of a number of streets that a separate estimate and a separate appropriation be made for each street.

2. The city engineer is required to indorse upon the ordinance the cost of the work to be paid for by the city only, and not the cost of that to be done at the expense of property-holders.

*Per* BAKEWELL, dissenting. — Under section 18, article 8, St. Louis Charter of 1870, the city engineer is required to indorse upon the ordinance the cost to be borne by the property-holder as well as that to be borne by the city.

APPEAL from St. Louis Circuit Court.
*Affirmed.*
*S. A. Holmes,* for appellant, cited: Sess. Acts 1870, p.

480, sec. 8, pp. 481, 482, secs. 14, 15, 17, 19 ; Weber *v.* Scherguis, 59 Mo. 389 ; Carroll *v.* Eaton, 2 Mo. App. 479.

*Gottschalk*, for respondent, cited : The State *v.* City of St. Louis, 56 Mo. 277 ; Sheenan *v.* Gleason, 46 Mo. 100 ; Carlin *v.* Cavender, 56 Mo. 286 ; Acts 1870, p. 479, sec. 7 ; Neenan *v.* Smith, 60 Mo. 292.

LEWIS, P. J., delivered the opinion of the court.

This is a suit on a special tax bill, dated April 19, 1872, amounting to $413.45, for curbing, guttering, and macadamizing done in front of defendant's lot, in the city of St. Louis. The court, sitting as a jury, rendered judgment for the plaintiff.

The defendant asked for eight instructions, which were refused. This refusal comprehending all the errors alleged, we will consider, in order, the points made thereupon.

City ordinance No. 7741, under which the work was done, provides for the grading, curbing, guttering, and macadamizing of about twenty streets. Section 18, article 8, of the City Charter of 1870 directs that every ordinance requiring public work to be done " shall contain a specific appropriation from the proper revenue or fund, based upon an estimate of cost, to be indorsed by the engineer on said ordinance, for the whole of the cost of each street, part of street, or other object, respectively ; and every contract shall contain a clause to the effect that it is subject to the provisions of the Charter that the aggregate payments thereon shall be limited by the amount of such work, specific appropriation," etc. The ordinance in this instance appropriated the sum of $32,075 for the work, which sum was indorsed by the engineer as his estimate of " the cost of the entire work contemplated by the within ordinance to be done at the expense of the city." Defendant contends that this indorsement and the appropriation were not such as the terms of the Charter required. He insists, first, that, instead of an estimate and an appropriation in gross for the work to be done upon all of the streets mentioned in the ordi-

nance, there should have been a separate estimate and separate appropriation for each street.

We cannot adopt this interpretation of the Charter. The words " or other object " are added, so as clearly to embrace whatever may be the subject-matter of the ordinance in each particular case. This may be part of a street, a whole street, or a district including a number of streets or parts. It cannot be intended, for the sake of mere minuteness of specification, to compel a rigorous division of the appropriation into parcels, by streets and parts of streets. For two or more parts of a street, improved under a single contract, at an insignificant cost, would thus require several appropriations; while for an entire street several miles in length, requiring many varieties of work, a number of distinct contracts, and the expenditure of thousands of dollars, a single appropriation would suffice.

Defendant further insists that the engineer should have indorsed upon the ordinance, not merely the cost of the work which was to be paid for by the city, but the whole cost, including the macadamizing, curbing, etc., which were to be done at the expense of the property-owners exclusively.

The argument in support of this view seems to be based on an error of grammatical interpretation. It is assumed that the words " for the whole of the cost " relate to the engineer's estimate. The structure of the sentence, however, connects them with the appropriation instead. This may be made more apparent by a slight transposition, not affecting the grammatical sense: "Every ordinance * * * shall contain a specific appropriation * * * for the whole of the cost, etc., [such appropriation being] based upon an estimate of cost, to be indorsed by the engineer," etc. A different construction will leave the terms " specific appropriation " without any sequence, and make the whole unintelligible. Thus, it is not the estimate, but the appropriation, which by the strict letter must be " for the whole of the cost " of the work. Whether inferentially the esti-

mate must follow the same rule, and in what manner, will presently appear.

What, then, is meant by an appropriation for the whole of the cost of the work? Clearly not an appropriation to cover the macadamizing and other items for which the city is not permitted to pay. This would leave nothing to be paid for by the property-owners, and would be in direct violation of the Charter. We are, therefore, compelled to interpret the expression " whole cost " as meaning the whole cost of what is to be paid for out of the City Treasury, and as not including anything more. The words " aggregate payments," in the next sentence, have, manifestly, the same limit of application. It might be argued that the " aggregate payments on the contract " would necessarily include the sums paid to the contractor by the property-owners. But these aggregate payments, it is commanded, must not exceed " the amount of such specific appropriation." Hence it is impossible to suppose that the words, although capable of a larger signification, are here used with reference to anything more than the aggregate payments on contract, to be made from the City Treasury. We thus perceive that in all these provisions the mind of the law-maker was occupied with the subjects of expenditures, appropriations, and estimates, as they might affect the municipal finances, and not in any other relation. The " specific appropriation for the whole of the cost," etc., thus understood being based on the engineer's estimate, the latter cannot be even inferentially required to cover any greater extent.

A glance at some other provisions in the Charter will suffice to show the harmony of this interpretation with the manifest objects of all the legislation in this connection. Sections 12 and 13 of article 6 are as follows:

" Sec. 12. No appropriation or payment shall be made from any revenue or fund account, in excess of the amount standing to the credit of such account.

" Sec. 13. * * * All ordinances that contemplate the payment of any money shall, upon their second reading, be referred to their appropriate committee, who shall obtain the indorsement of the comptroller thereon to the effect that sufficient unappropriated means stand to the credit of the fund therein named, to meet the requirement of said ordinance, or it shall not be lawful to recommend its passage or to pass the same."

The purpose plainly apparent in all these enactments is to guard against any expenditure upon public improvements until the money shall be actually in hand to pay for them. Section 12 — above quoted — declares this purpose, and the other provisions are to insure its consummation. Section 18 of article 8, which we were just now considering, requires a specific appropriation for the whole cost to the city of the work to be done, which cost must appear from the engineer's estimate duly indorsed. The comptroller's certificate must then show that the sum needed is ready to be so employed, otherwise the work cannot be authorized by any ordinance. Any interpretation of the 18th section which requires that the engineer's estimate shall include expenditures to be provided for by the property-owners must at least be regarded as foreign to the general object, thus unmistakably evinced, of the framers of the Charter. In *The State* ex rel. v. *City of St. Louis*, 56 Mo. 277, the relator was resisting a special tax bill founded on a sewer contract. He objected that no plans, profiles, and estimates had been furnished by the engineer, under the 17th section, 8th article, which declares that " the Council shall have no power directly to contract for any public work, * * * but the city engineer shall in all cases * * * prepare and submit plans, profiles, and estimates of cost of any proposed work," etc.

Said Judge Wagner, delivering the opinion of the court : " Section 17 will not bear the construction placed upon it by the appellant. The plans, profiles, and estimates there

mentioned are only required where the work is done by the
city and paid for by appropriations out of the City Treasury.
This is evidently shown by the 18th section, which directly
refers to the preceding section, and says that every ordi-
nance requiring such work to be done shall contain a specific
appropriation from the proper revenue or fund ; and pro-
vision is then made for stopping or suspending the work for
want of means.    This part of the Charter has no applica-
tion whatever to work done or carried on at the expense of
the property-holder.''

This language of the Supreme Court is conclusive author-
ity for the interpretation herein claimed, unless a showing
can be made against its application to street improvements.
It  was  there  applied  to  a  sewer  improvement.    But
who can discover any difference on that account?    Both
are '' public works '' within the same and the only provision
which authorizes the issuing of special tax bills in any case.
It is assumed, however, that a sewer, because of the fact that
it is paid for wholly by the property-owners, is therefore not
a '' public work '' within the meaning of the Charter.    If this
be true, then the macadamizing, curbing, etc., of streets,
being also paid for by the property-holders exclusively, are
for the same reason not public works.    It follows that they are
not to be included in the engineer's estimate required by the
18th section, because, by the very language used, the re-
quirement extends only to '' every public work.''

The truth is, both sewer-building and macadamizing of
streets are public works, within the meaning of the Charter.
Both are done under special city ordinances.    Both are done
under contracts made by the city officers.    Both are paid
for by assessments against the property-owners, enforced by
special tax bills.    Both are equally excluded from the pur-
view of the 17th and 18th sections by the declaration of the
Supreme Court that these sections have '' no application
whatever to work done or carried on at the expense of the
property-holders.''    It may possibly be true that many use-

less street improvements would have been omitted in the past, if the City Council had been informed, before directing them, how much they would cost to the adjacent property-owners. But this suggestion raises the question of expediency rather than of existing law. If the Legislature has failed to provide against the evils implied, it is not within our province to supply a remedy, however desirable. We must interpret the law as we find it, and must in so doing be ruled by the interpretation of our Supreme Court.

In *Wittler* v. *Cavender*, decided by this court in December last, the answer charged that no estimate of any sort had been indorsed on the special ordinance directing the improvement. This allegation having been demurred to, we held that it contained a sufficient defense, reversing the judgment of the court below. The question there presented was very different from the one now before us. We were then to pass upon the effect of a total disregard of a Charter requirement. In this case we have only to determine whether an indorsement made on the ordinance was in substantial compliance with the same requirement. The writer of this delivered a separate opinion on that occasion, limiting his concurrence in the reversal to the single consideration that the Charter provision was mandatory, and yet, as the case was presented, no attempt had been made to obey it. We think that the engineer's indorsement in this case was just what the law demanded.

Judge HAYDEN concurring, the judgment is affirmed. Judge BAKEWELL dissents.

BAKEWELL, J., dissenting.

This is a suit on a special tax bill for grading, curbing, guttering, and macadamizing several streets. The ordinance under which the work was done appropriated $32,075 for the cost of the improvement, which sum was indorsed by the city engineer upon the ordinance as his estimate of

the cost of the work to be done at the expense of the city. There was judgment below for the plaintiff.

Of the work done, the city, by law (Chart. 1870, art. 8, sec. 8), pays for the grading only; the rest of the work is a charge upon the adjoining property.

The law provides (sec. 18) that " every ordinance requiring such work to be done shall contain a specific appropriation from the proper revenue or fund, based upon an estimate of cost, to be indorsed by the engineer upon said ordinance, for the *whole of the cost* of each street, part of street, or other object, respectively."

This provision is mandatory, as has been decided in this court in *Wittler* v. *Cavender*. The law seems to me so plain as to leave no room for construction. The cost of grading is not the whole cost of the street, but may be a very insignificant part of the cost. Had the attention of the City Council been always called, by indorsement upon the ordinance, as the law directs, to the entire cost of the work, perhaps we should not see, as we now do, miles of useless streets in the suburbs of this city, leading nowhere, used by no one, though constructed for years — grown up with weeds and brush, and falling to decay, but once curbed, guttered, and macadamized, apparently for the sole benefit of the contractors, to the oppression of · the property-holder, the general depreciation of the value of real estate in St. Louis, and without the slightest advantage to the general public.

It is argued that, as the law requires (sec. 18) that the amount of the specific appropriation is to be ascertained from the engineer's estimates, it will be impossible to determine the city's share of the expense, if the estimate is to be of the whole cost. An estimate of the whole cost cannot, I apprehend, be made without making a separate estimate of each part also. The estimate of the whole cost includes an estimate of the grading; but an estimate of the grading

alone excludes the idea of an estimate of the whole cost, and for that reason is not a compliance with the law.

In my opinion, there was no sufficient compliance, in this case, with the terms of the Charter, and the judgment of the Circuit Court should be reversed.