## STATE v. A. H. READ CO.*
(No. 1263; Oct. 22. 1925; 240 Pac. 208)

Constitutional Law—5th Amendment to Federal Constitution Not Applicable to States—Master and Servant—Street Paving Is ''Public Work''—Statutes—Criminal Law—Act Charged Must Be Denounced to Constitute Crime—Criminal Statutes Strictly Construed—Regulation of Hours of Labor—Due Process of Law.

1. Federal Const. Amend. 5, providing that no person shall be deprived of life, liberty, or property without due process of law, has no application to state governments, it being only a restriction on powers of federal government.

2. Contractor, engaged in street paving work for municipal corporation, *held* engaged in public or municipal work, within Const. art. 19, § 4308, declaring eight hours of actual work to constitute a lawful day's work on all state and municipal works, notwithstanding that it was being done under Comp. St. 1920, §§ 1966-2040, authorizing assessment on land specially benefited to defray costs and expenses thereof, ''public works'' being all fixed works constructed for public use.

3. No one can be lawfully convicted of a crime, whether felony or misdemeanor, unless act charged, if not a crime at common law, is clearly denounced or penalized as a crime by statute, ''crime'' being defined as an act committed or omitted in violation of a public law, either forbidding or commanding it.

4. Criminal statutes are to be strictly construed, and are not to be enlarged by implication or extended by inference

or construction, though words thereof are to be used in their ordinary acceptation and in the sense in which Legislature has obviously used them.

5.  Court is powerless to add necessary words to a statute denouncing an act as a crime.

6.  Comp. St. 1920, § 4308, declaring eight hours of actual work to constitute a lawful day's work on all public works, *held* not violative of Const. art. 1, § 22, requiring that rights of labor shall have just protection, etc.

7.  Comp. St. 1920, § 4308, declaring eight hours of actual work to constitute a lawful day's work on public works, *held* not violative of Const. art. 1, § 34, requiring all laws of a general nature to have a uniform operation.

8.  Const. art. 1, § 34, "uniformity provision," is satisfied by a statute applying uniformly within a class of persons based on a reasonable distinction or objects of reasonable class and operating same on all parts of the state under same circumstances.

9.  Comp. St. 1920, § 4308, declaring eight hours to constitute a lawful day's work on public works, *held* a valid exercise of legislative power, and to that extent not violative of state Const. art. 1, § 6, and federal Const. Amend. 14, providing that no person shall be deprived of life, liberty, or property without due process of law.

10.  Comp. St. 1920, § 4308, declaring eight hours to constitute a lawful day's work on public works, and penalty for violation thereof being provided in section 4309, *held* void as penal statute, in view of Const. art. 1, § 10, on comparison with Comp. St. 1920, §§ 4313 and 4314, amended by Laws 1923, c. 62, because of indefiniteness and uncertainty of its penal provisions, and thereby to conflict with Const. art. 1, §6, federal Const. Amend. 14, providing that no person shall be deprived of life, liberty, or property without due process of law.

*See Headnotes (1) 12 C. J. p. 1194 (2) 26 Cyc. p. 979, 32 Cyc. p. 1257 (3) 16 C. J. pp. 50, 68 (4) 36 Cyc. pp. 1183, 1186 (5) 12 C. J. p. 885; (6) 26 Cyc. p. 979 (7) 36 Cyc. p. 992; (8) 36 Cyc. pp. 992, 993 (9) 12 C. J. p. 1283, 26 Cyc. p. 979 (10) 12 C. J. p. 1283, 16 C. J. p. 68.

On reserved questions from District Court of Laramie County, WILLIAM A. RINER, Judge.

The A. H. Read Company was charged with the violation of the eight hour labor law, relating to public works. The

cause was submitted on reserved constitutional questions from District Court. Questions answered.

*David J. Howell,* Attorney General, for plaintiff.

Sections 3408-3409 C. S. regulating hours of labor on public works finds support in Art. 19, Section 1 of the State Constitution. Some conflict of opinion as to the validity of the statute regulating hours of labor on public works is presented by the authorities, but the trend of modern opinion seems to support statutes of this character. New York had formerly held laws of this kind unconstitutional, but subsequent to an amendment of its constitution the case of People ex rel. Metz was decided and practically all of the cases upon this subject are there referred to in the briefs or in the opinion upholding the principle of regulation; thereafter the case of Atkins vs. Kansas was decided by the Sup. Court of that State upholding a similar statute, and this case was reviewed by the U. S. Supreme Court on appeal and affirmed; Atkins vs. Kansas, 191 U. S. Rep. 207; that case involved a paving contract based upon a street improvement statute similar to our statute, and it was held that it was public work within the meaning of the Kansas Law regulating hours of labor on public works. This case has been generally followed and apparently marks the turning point in the conflict of authorities respecting the validity of laws of this kind; In Re Broad 36 Wash. 449; 70 L. R. A. 1011. Reference has been made to the insufficiency of the information, but it is probable that the technical defects, if any, in the charging part of the information, cannot be considered on reserved questions. Defendant's brief contains a fair discussion of the authorities holding against its contentions and it seems unnecessary to again cite them here. Plaintiff feels that in the light of the modern trend of protection of labor, its working hours and rights, it may be said that legislation of this character is being upheld almost without exception.

*William E. Mullen* for Defendant.

The statute 4308 and 4309 C. S. seems to be a fragmentary part of a statute borrowed from some other state. For example, the State of Ohio has a statute almost identical in language, but containing additional provisions, defining acts which constitute a violation of the statute, and to which the penalty applies; 94 Ohio Laws 357; Cleveland vs. Clements Co., 67 O. S. 197, 59 L. R. A. 775, 65 N. E. 885. Our statute fails to prescribe the elements of an offense, or define acts constituting its violation. Penal statutes are not to be enlarged by implication; City of Shawnee vs. Landon, 3 Okla. 440, 106 Pac. 652; State vs. Fontenat, 112 La. 628, 36 So. 630; U. S. vs. Wiltberger, 5 Wheat 76, 5 L. ed. 37; Pentlarge vs. Kirby, 19 Fed. 501; People vs. Friedman, 142 N. Y. S. 367; People vs. Lopez, 23 P. R. 106. Section 4308 C. S. merely prescribes a standard of hours, as constituting a day's work for certain classes of persons employed on public works, but does not define a penal offense. Prosecutions brought under it do not therefore constitute due process of law, the meaning of which is well understood; McGarvey vs. Swan, 17 Wyo. 120; due process of law in a criminal case, requires a sufficient information, under a valid statute; Koppala and Lampe vs. State, 15 Wyo. 419; 12 C. J. 1189-1193. Due process of law, requires a law creating or defining an offense and failing in that, is void for want of due process of law; Inter. Harv. Co. vs. Kentucky, 234 U. S. 216, 58 L. ed. 1284; Collins vs. Ky., 234 U. S. 634, 58 L. ed. 1510; Malone vs. Ky., 234 U. S. 639, 58 L. ed. 1512; American Seeding Machine Co. vs. Ky., 236 U. S. 660, 59 L. ed. 773; First Nat'l Bank vs. U. S. 206 Fed. 374, 46 L. R. A. (NS) 1139; (8th Cir.); People vs. Salomon, 212 N. Y. 446, 106 N. E. 111; People vs. Co., 144 N. Y. S. 707; the statute must so clearly define acts on which the penalty is denounced, that no ordinary person can fail to understand his duty; Brown vs. State, 137 Wis. 343, 119 N. W. 338; without a definition there can be no offense; Hackney vs. State, 8 Ind. 494; Czarra vs.

Board, 25 App. D. C. 443; the City of Cheyenne is a body
corporate 1623 C. S. but not subject to imprisonment, as is
also each county and school district in the State; 1300, 2237
C. S. It is therefore impossible to impose a uniform penalty;
the right to follow any lawful vocation and make a contract
is a constitutional right; State vs. City of Sheridan, 25 Wyo.
359; it is doubtful whether street improvement work under
the authority of Chapter 129 C. S. 1920 is public work.
There is a distinction between the power delegated to muni-
cipalities of a sovereign character, and that other power ex-
ercised by corporations to carry on public improvement,
supply water, light or other functions for the benefit of its
inhabitants generally regarded as proprietary acts; West-
ern College vs. Cleveland, 12 O. S. 375; Cinti. vs. Cameron,
330 O. S. 366; Cleveland vs. Clements, 67 O. S. 197, 65
N. E. 885; Com. vs. Casey, 231 Pa. 170; 80 Atl. 78, 34 L. R.
A. (NS) 767; O'Rourke vs. Sioux Falls, 4 S. D. 47, 54 N.
W. 1044, 19 L. R. A. 789; with respect to property and con-
tract rights of local concerns, the State will not interfere;
People vs. Coler, 166 N. Y. 13, 59 N. E. 716; Lexington
vs. Thompson, 24 Ky. L. R. 384, 68 S. W. 477; this statute
is not based upon any principle of police power; Loehner
vs. New York, (U. S.) 49 L. ed. 937; the above action in-
cluded the more or less noteworthy controversy restricting
the employment of bakers to 60 hours per week and ten
hours a day. We concede the existence of a rule authoriz-
ing the regulation of labor upon public works. It is recog-
nized by our own constitution, Art. 19, Section 1. The Con-
stitution employs the term "actual work," but the statute
in question employs the term "time of service." The terms
import a distinction of meaning. The New York court has
denied the power of the Legislature to regulate the hours
of labor on public work; People vs. Orange Co., 175 N. Y.
84, 67 N. E. 129; the principle was followed in the City of
Seattle vs. Smyth (Wash.) 60 Pac. 1120; however since
the Kansas case of Atkins vs. Kansas, which was reviewed
and affirmed by the U. S. Sup. Ct. in 191 U. S. 207, 48 L.

ed. 148, the right to regulate the hours of work has been generally recognized; Opinions of the Justices, 208 Mass. 619, 94 N. E. 1044; In Re Broad, 36 Wash. 449, 70 L. R. A. 1011, and since the amendment of the New York Constitution the case of People vs. Orange Company has not been followed in that state; People vs. Metz, 193 N. Y. 148, 85 N. E. 1070; a different rule obtains in Illinois; Fiske vs. People, 186 Ill. 206, 52 L. R. A. 291; the Montana court has sustained statute similar to the one here in question, but it seems to be out of harmony with the settled weight of authority requiring a statute to define acts constituting a violation of law; State vs. Livingston Company, 34 Mont. 570; 87 Pac. 980. The result in that case seems to be predicated upon the idea that the intention of the Legislature might be inferred. We submit that the questions numbered 1 to 5 should be answered in the affirmative, and reserved question numbered 6 should be answered in the negative.

POTTER, Chief Justice.

This case is here on reserved constitutional questions. There was filed by the prosecuting attorney in the district court sitting in and for Laramie County, an information against "The A. H. Read Company," charging, as stated in the caption, "Violation of Labor Law." It alleges that said company, on the 16th day of October, 1923, in said county, in this state, did—

"Then and there unlawfully permit one Frank Schlitt, a person in the employ of said Company, to work as a laborer on a public work, to-wit: a Street Paving Work being performed by the said defendant Company under a contract authorized by Chapter 129, Wyoming Compiled Statutes, 1920, and existing between the City of Cheyenne, Wyoming, a municipal corporation and the said defendant Company for the paving of streets in Paving District No. 1, of Cheyenne, Wyoming, for a period of more than eight hours in one calendar day; to-wit; a period of ten hours on the said 16th day of October, 1923."

Upon the hearing of a demurrer to the information the district court, of its own motion, entered an order reciting that there is involved in the cause, by reason of said demurrer, "important and difficult constitutional questions, a decision of which is necessary in said cause," and directing that said questions be reserved to this court for its decision thereon. The reserved questions stated substantially as in the order are:

1.  Is the statute (L. 1913, Ch. 90, Secs. 4308 and 4309, Comp. Stat. 1920) in conflict with Sec. 6 of Art. I of the Constitution of this state, providing that no person shall be deprived of life, liberty or property without due process of law?

2.  Is the statute in conflict with Article V of the Constitution of the United States, making a like provision?

3.  Is the statute in conflict with Sec. 1, Art. XIV of the Constitution of the United States, providing that no state shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws?

4.  Is the statute in conflict with Sec. 22 of Art. 1 of the State Constitution, requiring that the rights of labor shall have just protection through laws calculated to secure to the laborer proper rewards for his services and to promote the industrial welfare of the state?

5.  Is the statute in conflict with Sec. 1, Art. IV of the Constitution of this state, requiring all laws of a general nature to have a uniform operation?

6.  Is local improvement work, such as street paving of cities or towns, authorized by Chapter 129, Comp. Stat. 1920, "public works" or "municipal works" within the meaning of Sec. 1 (Concerning Labor) of Art. XIX of the State Contsitution, or of the statute referred to in the foregoing questions?

Chapter 129, Comp. Stat. 1920, authorizes the making and maintenance of municipal local improvements and for paying the cost and expense thereof, partly or wholly, by

assessments on the property specially benefitted thereby.
It is conceded that the purpose of the information was to
charge an offense punishable under the provisions of Sec-
tions 4308 and 4309 aforesaid, enacted in 1913, and pub-
lished as Chapter 90 of the laws of that year. They read as
follows:

§4308. ''The time of service of all laborers or workmen
or mechanics employed upon any public works of the state
of Wyoming, or of any county, city and town or any other
political sub-division thereof, whether said work is done by
contract or otherwise, shall be limited and restricted to
eight hours in any one calendar day, except in cases of
emergency caused by fire, flood, or danger to life or prop-
erty; or except to work upon public or military works or
defenses in time of war.''

§4309. ''Any person, or persons, body corporate, agent,
manager or employer who shall violate any of the provisions
of §4308 shall be deemed guilty of a misdemeanor, and upon
conviction thereof, shall for each offense, be subject to a
fine of not less than one hundred dollars or more than five
hundred dollars, or imprisonment in the county jail for a
period of not less than one month or not more than six
months, or both such fine and imprisonment in the discre-
tion of the court.''

The subject heading of Article XIX of our State Consti-
tution, referred to in the 6th question, is ''Miscellaneous,''
and it contains several sections, each numbered 1, but under
a separate sub-heading. The second section of that Article
in the order in which the several sections are found therein
is numbered 1, under the sub-heading ''Concerning La-
bor;'' and it is the only section under that sub-head. It
provides:

''Eight (8) hours actual work shall constitute a lawful
day's work in all mines, and on all state and municipal
works.''

Defendant's contentions are generally: That the first five questions should be answered in the affirmative and the sixth in the negative; thereby holding the statute to be void because violating the several suggested constitutional provisions, and that the work specified in the information is not "public work" within the meaning of said statute or the constitutional provision mentioned in the 6th question. The argument against the constitutionality of the statute may be separated, for convenient discussion, into two divisions,—one relating to the legislative power to limit the hours of labor upon public works, and the other to the legal effect and sufficiency of the statute as authority or the foundation for a criminal prosecution.

In our consideration of the matter under the first division, thus stated, it will be assumed that the purpose and legal effect of the statute is to place an arbitrary limitation upon the hours of such labor, subject only to the exception stated in the statute. Contending against the legislative power to do that, with respect to work by or for municipal corporations, it is argued: That the statute does not fall within the class of labor statutes upheld as a legitimate exercise of police power, such as those relating to the employment of females, work in mines, smelters, or other occupations "where considerations of health, safety or morals" justify either prohibiting employment, or restricting it to a limited number of hours per day. That, except when proper under the police power, a state may not limit a citizen in the exercise of his right to contract, by forbidding his employment beyond eight hours in any one day. And that a municipal corporation, concerning its property and private contract rights, enjoys practically the same immunity from legislative interference as that "accorded to business corporations and private citizens," preventing the legislature from dictating the form in which its contracts shall be framed, or the wages it shall pay to laborers.

But it is conceded in the brief that the constitution of this state may have announced a rule permitting a legislative

limitation of the hours of labor upon public work, by Sec. 1, Art. XIX, ''Concerning Labor'' aforesaid, while questioning the propriety of considering the statute as conforming to that provision, in view of the use of the words ''actual work'' in the latter, and ''time of service'' in the former, which, it is suggested, may not mean the same thing.

A number of cases are cited in support of these points, though it is conceded that some of the later cases, including Atkin v. Kansas, 191 U. S. 207, 48 L. ed. 148, 24 S. Ct. 124, have sustained similar legislation as against contentions like those above outlined. And, with respect to those specific objections to the statute, we think the later cases thus referred to represent the trend of authority at this time; and that the decision in the cited Kansas case must be understood as having settled the question in favor of the validity of such statutes. The provisions of the Federal Constitution considered in that case were the due process of law clauses in the 5th and 14th amendments, and those of the 14th amendment declaring that no state shall make or enforce any law abridging the privileges or immunities of the citizens of the United States, and that no state shall deny to any person within its jurisdiction the equal protection of the laws. The 5th amendment has no application to state governments, having always been held to be a restriction only upon the powers of the federal government, and for that reason alone the second reserved question, referring to the validity of the statute under that amendment, must be answered in the negative. Booth v. Indiana, 237 U. S. 391, 35 S. Ct. 617, 59 L. ed. 1011; Kelly v. Pittsburgh, 104 U. S. 78, 26 L. ed. 658.

The case of Atkin v. Kansas contains a reference to a former decision of the court upon one phase of the general question of the limitation of hours of labor, Holden v. Harvey, 169 U. S. 366, 18 S. Ct. 383, 42 L. ed. 780, wherein a statute of Utah limiting hours of employment in mines and smelters was upheld, upon the ground that such employment might be detrimental to the health of employees, and

that so long as there were reasonable grounds for believing that to be so, the legislative decision upon the subject could not be reviewed by the federal court. And it was remarked in the Atkin case that whether a similar statute applicable to laborers in purely private work would be sustained was a question of large import, but not necessary to be determined or considered in the instant case. Thereupon the court stated as its reasons for sustaining the validity of the Kansas statute then before it, limiting hours of labor upon public work, that municipal corporations are creatures —mere political subdivisions—of the state, for the purpose of exercising a part of its powers; that what they lawfully do of a public character is done under the sanction of the state; that they are, ''in every essential sense, only auxiliaries of the state for the purpose of local government,'' and that ''unless there is some constitutional limitation on the right, the legislature might, by a single act, if we can suppose it capable of so great a folly and so great a wrong, sweep from existence all of the municipal corporations in the state, and the corporation could not prevent it.'' The court said:

''The improvement of the boulevard in question was a work of which the state, if it had deemed it proper to do so, could have taken immediate charge by its own agents; for it is one of the functions of government to provide public highways for the convenience and comfort of the people. Instead of undertaking that work directly, the state invested one of its governmental agencies with power to care for it. Whether done by the state directly or by one of its instrumentalities, the work was of a public, not private character. * * * We can imagine no possible ground to dispute the power of the state to declare that no one undertaking work *for it or for one of its municipal agencies* should permit or require an employee on such work to labor in excess of eight hours each day, and to inflict punishment upon those who are embraced by such regulations and yet disregard

them. It cannot be deemed a part of the liberty of any contractor that *he* be allowed to do public work in any mode he may choose to adopt, without regard to the wishes of the state. On the contrary, it belongs to the state, as the guardian and trustee for its people, and having control of its affairs, to prescribe conditions upon which it will permit the public work to be done on its behalf, or on behalf of its municipalities. No court has authority to review its action in that respect. * * * We rest our decision upon the broad ground that the work, being of a public character, absolutely under the control of the state and its municipal agents, acting by its authority, it is for the state to prescribe the conditions under which it will permit work of that kind to be done. Its action touching such a matter is final so long as it does not, by its regulations, infringe the personal rights of others; and that has not been done.''

That case was cited and approved in Ellis v. U. S., 206 U. S. 246, 27 S. Ct. 600, 51 L. ed. 1047, 11 Ann. Cas. 589. It having, at one time, been decided in New York that such a law was invalid, the state constitution was afterwards amended so as to provide that the legislature may regulate and fix the hours of work or labor, and make provision for the protection, welfare and safety of persons employed by the state or any county, city, town, village or other civil division, or by any contractor performing work, labor or services therefor. And, thereafter, when the question was again presented, a statute upon the subject was held to be constitutional, ''because the people have so amended the constitution as to permit such legislation.'' The court said:

''We regard discussion of the question involving discrimination between persons employed by private individuals and those employed by municipal corporations as foreclosed by the decision of the Supreme Court of the United States in Atkin v. Kansas, 191 U. S. 207, 24 Sup. Ct. 124, 48 L. Ed. 148.''

The controlling authority of Atkin v. Kansas upon the subject has been recognized also in Colorado: Keefe v. People, 37 Colo. 317, 87 Pac. 791, 8 L. R. A. (N. S.) 131; in Montana: State v. Livingston Concrete Bldg. & Mfg. Co., 34 Mont. 570, 87 Pac. 980, 9 Ann. Cas. 204; in Oklahoma: Byars v. State, 2 Okl. Cr. 481, 102 Pac. 804, Ann. Cas. 1912 A. 765; and in Washington: Broad v. Woydt, 36 Wash. 449, 78 Pac. 1004. As shown by the above quotation from the opinion in the said case, the court held also that the paving work was public and not private work.

The defendant Atkin in that case was the contractor, engaged in performing the work for the municipal corporation. If not controlling authority upon the question of the public character of the work, in the sense that it forecloses further consideration, we see no reason to question its correctness. And we cannot doubt that the work involved in the case at bar was public, or at least municipal, work within the meaning of the provision of the constitution declaring eight hours of actual work to constitute a lawful day's work on all state and municipal works, and likewise within the meaning of the statute in question, notwithstanding that it was being done under a statute authorizing assessments upon land specially benefitted to defray the cost and expense thereof. The term "public works" is said to be defined as "all fixed works constructed for public use, as railways, docks, canals, waterworks, roads, etc." Ellis v. Grand Rapids, 123 Mich. 567, 82 N. W. 244; Winters v. Duluth, 82 Minn. 127, 84 N. W. 788. Our view of the matter is well explained in Seibert v. Cavender, 3 Mo. App. 421, involving work of grading, curbing, guttering and macadamizing certain streets of the city of St. Louis. Speaking upon the question whether a provision of the charter applied to street improvements, the court said, after citing a former decision:

"It was there applied to a sewer improvement. But who can discover any difference on that account? Each are

'public works' within the same and the only provision
which authorizes the issuing of special tax bills in any case.
It is assumed, however, that a sewer, because of the fact
that it is paid for wholly by the property owners, is there-
fore not a 'public work' within the meaning of the charter.
If this be true, then the macadamizing, curbing, etc., of
streets, being also paid for by the property holders exclu-
sively, are for the same reason not public works.   *   *   *
The truth is, both sewer-building and macadamizing of
streets are public works, within the meaning of the char-
ter.   Both are done under special city ordinances.   Both
are done under contracts made by the city officers.   Both
are paid for by assessments against the property-owners,
enforced by special tax bills.''

But the principal objection urged against the validity
of the statute in the brief is that the statute does not create
or define a crime, or at least with the certainty necessary
in statutes creating criminal offenses, and that, therefore,
so far as relied upon to support the criminal charge in this
case, it fails to constitute due process of law.   It is argued
that nothing is declared unlawful by the statute, and noth-
ing penalized, except a violation of the provisions of the
first section, which declares merely a legislative limitation
of the time of service upon public works, without expressly
commanding or prohibiting anything.   And to illustrate
the point, our attention is called to a statute of Ohio con-
taining, in addition to the provisions found in our statute,
an intermediate provision expressly declaring it to be un-
lawful for any employer to require or permit any of the
classes of workmen mentioned to labor more than the speci-
fied number of hours, citing Cleveland v. Construction Co.,
67 O. St. 197, 65 N. E. 885, 59 L. R. A. 775, 93 Am. St. Rep.
670.   And most of such statutes contain a provision of that
character.   Such a provision was in the Kansas statute con-
sidered in the Atkin case.   Ch. 54a, (Sec. 3828) Gen. Stat.
Kansas 1901.

In a number of cases decided by the Supreme Court of the United States, and other federal courts, in recent years, it has been held that a penal statute prescribing no certain standard of conduct violates the fundamental principle of justice embodied in the conception of due process of law, and is void because violating the provisions of the 5th amendment to the constitution of the United States declaring that no person shall be deprived of life, liberty or property without due process of law, and the provision of the 6th amendment declaring that in all criminal prosecutions the accused shall enjoy the right to be informed of the nature and cause of the accusation; having reference to charges of crime under the laws of the United States. And state laws thus uncertain are likewise held to be void upon the same principle, as violating the due process of law clause and the other related provisions of the 14th amendment, which applies to state governments. Thus, in U. S. v. Cohen Grocery Co., 255 U. S. 81, 41 S. Ct. 298, 65 L. ed. 516, 14 A. L. R. 1045, it was held that Section 4 of the Food Control Act of August 10, 1917, as amended in 1919, in denouncing and attaching a penalty to the making of any unjust or unreasonable rate or charge in handling or dealing in necessaries, construed as forbidding and penalizing the exaction of an excessive price upon the sale of a commodity, was to that extent, since it sets up no ascertainable standard of guilt, repugnant to the Fifth and Sixth Amendments to the Constitution, which require due process of law, and that persons accused of crime shall be adequately informed of the nature and cause of the accusation.

In Oklahoma Operating Co. v. Love, 252 U. S. 331, 40 S. Ct. 338, 64 L. ed. 596, it was held that where, under a questioned law of Oklahoma, there was no opportunity of reviewing judicially a legislative rate fixed pursuant to a section of the statute, except by way of defense to proceedings for contempt, which might be instituted for violating the order, and that the possible penalties for such violation were so severe as to prohibit resort to that remedy, it was

held to be void under the 14th amendment to the federal Constitution. See also Int. Harvester Co. v. Kentucky, 234 U. S. 216, 34 S. Ct. 853, 58 L. ed. 1284; Collins v. Kentucky, 234 U. S. 634, 34 S. Ct. 924; General Constr. Co. v. Conally, 3 Fed. 2nd S. 666, where the various decisions on the subject are cited, and Wabash Ry. Co. v. O'Bryan, 285 Fed. 583. In this last cited case the court, considering a Missouri statute, after citing U. S. v. Cohen, 255 U. S. 81; 41 S. Ct. 298; 65 L. ed. 516, said:

"Since the Constitution of Missouri contains precisely the same provision touching the right of a person accused of a crime to demand 'the nature and cause of the accusation,' it is obvious that a statute which does not with reasonable certainty furnish this information is unconstitutional and void."

It follows that the objection here that no crime is created because of the absence from the statute of the necessary expressions of command or prohibition presents a constitutional question, to be considered in answering at least the first and third reserved questions. At the outset of the discussion of that matter, let it be said that our own state constitution contains a provision that in all criminal prosecutions the accused shall have the right to demand the nature and cause of the accusation; Art. 1, Sec. 10. And that would be denied him in the case of a purely statutory crime, in the absence of sufficient certainty in the statute under which he is prosecuted.

"Crime," as usually defined, is "an act committed or omitted, in violation of a public law either forbidding or commanding it." 4 Blackstone's Comm. 5; 16 C. J. 50; 8 Rul. Case. L. 50. And no one can be lawfully convicted of a crime, whether felony or misdemeanor, unless the act charged, if not a crime at common low, is clearly denounced or penalized as a crime by statute. So it is well settled that criminal statutes are to be strictly construed, which means

that they are not to be enlarged by implication or extended by inference or construction, though the "maxim," as said in Lewis' Sutherland on Statutory Construction (Vol. 2, 2nd Ed., Sec. 520), "is not to be so applied as to narrow the words of a statute to the exclusion of cases which those words in their ordinary acceptation, or in that sense in which the legislature has obviously used them, would comprehend." See also 26 Ency. L., 2nd Ed., 657, 658; 36 Cyc. 1183-1187. This rule, said to be based upon a conception of manifest justice and the plain principle that the power of punishment is vested primarily in the legislature, requires a sufficient degree of certainty in a criminal statute, that will place it outside the necessity of judicial determination, through mere implication or construction, of who or what acts are punishable under it. Thus in U. S v. Reese, 92 U. S. 214, 23 L. ed. 563, it is said:

"If the legislature undertakes to define by statute a new offense, and provide for its punishment, it should express its will in language that need not deceive the common mind. Every man should be able to know with certainty when he is committing a crime. * * * It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government."

In Bank v. U. S., 202 Fed. 374, 124 C. C. A. 256; 46 L. R. A. (N. S.) 1139 the Eighth Federal Circuit Court of Appeals, holding that the act charged did not come within the penal provision of the statute, stated the general principle as follows:

"A penal statute which creates a new crime and prescribes its punishment must clearly state the persons and acts denounced. * * * An act which is not clearly an

offense by the expressed will of the legislative department
before it was done may not be lawfully or justly made so
by construction after it is committed, either by the inter-
polation of expressions, or by the expunging of some of its
words by the judiciary. Ex post facto construction is as
vicious as ex post facto legislation. 'To determine that a
case is within the intention of a statute, its language must
authorize us to say so.   *   *   * . The case must be a strong
one, indeed, which would justify a court in departing from
the plain meaning of words in search of an intention which
the words themselves do not suggest.'   *   *   *   It is only
when a penal statute clearly and plainly subjects parties
and acts to its denunciation that they may be lawfully pun-
ished thereunder. If it is doubtful whether or not it in-
cludes them, they ought to be and must be exempted from
criminal prosecution thereunder.''

This court has said:

''It is a rule of construction that a penal statute cannot
be extended by implication or construction to persons or
things not expressly brought within its terms, nor to acts
not within the letter of the statute; and also, that 'all
doubts as to the construction are resolved in favor of the
defendant.' '' State v. Thompson, 15 Wyo. 136, 87 Pac.
433.

''In the first place the section under discussion is a penal
statute.   *   *   *   It must therefore be construed strictly.
*   *   *   A statutory liability created in derogation of the
common law cannot be enlarged by construction. We can-
not, in such case, go beyond the clearly expressed provi-
sions of the act.'' People ex rel v. Dolan, 5 Wyo. 245, 39
Pac. 752.

In the early case of U. S. v. Sharp, 1 Peters C. C. Rep.
118, it was said: ''Laws which create crimes ought to be
so explicit in themselves, or by reference to some other .

standard, that all men, subject to their penalties, may know what acts it is their duty to avoid." Like language was used in the more recent case of U. S. v. Brewer, 139 U. S. 278, 11 S. Ct. 538, 35 L. ed. 190, where it was said also.: "Before a man can be punished his acts must be plainly and unmistakably within the statute." In People v. Elliott, 204 Mich. 157, 169 N. W. 930, the court said: "A criminal statute ought to be so plain and unambiguous that 'he who runs' may read, and understand whether his conduct is in violation of its provisions." In U. S. v. Henry, (D. C.) 286 Fed. 165, sustaining a general demurrer to an indictment on the ground that it stated no offense, the learned district judge affirmed the same principle by saying:

"It is almost an axiom under our system of government that every negation, every prohibition, every criminal statute passed by either federal or state sovereignty, shall be so clear in its wording as that every citizen may read it, and know just what it prohibits, and just what it punishes."

The rule is stated in California, in Ex-parte Lockett, 179 Cal. 581, 178 Pac. 134:

"So important is the liberty of the individual that it may not be taken away   *   *   ·*,   except upon conviction of a crime, which has been so clearly expressed that all might know in what act or omission the violation of the law should consist."

Still more specific is the statement in the Missouri case of Ex parte Taft, 284 Mo. 531, 225 S. W. 457:

"Statutes and ordinances which fix crimes, or quasi crimes, should so fix them that there could be no uncertainty. They should be so worded that one could read them, and know whether or not he was violating law. They should not be so worded as to leave their substantive elements to the

caprices of either judge or jury. In other words the law should be complete and definite."

Chief Justice Marshall, speaking for the court in U. S. v. Wiltberger, 5 Wheat. 76, 5 L. ed. 37, said, that the rule that penal laws are to be construed strictly is founded on the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in the legislative, not the judicial, department; and that if a principle that a case not clearly within the provisions of the statute, though within the reason or mischief thereof, may be brought within it by construction, "has ever been recognized in expounding criminal law, it has been in cases of considerable irritation, which it would be unsafe to consider as precedents forming a general rule for other cases." Proceeding, then, to an examination of the statute under consideration, and remarking that "having premised these general observations," and conceding as quite improbable that Congress could have intended the differences which their words import, he said further: "But probability is not a guide which a court, in construing a penal statute, can safely take." See also Lewis' Sutherland on Statutory Construction, 2nd Ed., Sec. 551.

We are thus led directly to the inquiry what, if anything, is commanded or prohibited by the statute in question. Whatever that may be must be found, if at all, in Section 4308, the first section of the original act, since the succeeding section, providing penalties, refers to it and penalizes only a violation of its provisions. Whether we merely glance at that section (4308) or read it closely, we are unable to discover therein any express command or prohibition. It declares merely that "the time of service" of the class of workmen specified shall be limited and restricted to eight hours in any one calendar day, with a stated exception. The effect of that, standing alone, does not go beyond a legislative statement that the specified number of hours shall constitute a lawful day's work for said workman. It

does not command that such time shall thereafter be limit-
ed by some one or by an employer. But the legislature, it-
self, thereby limits and restricts such time of service. We
think it true that it declares a rule of conduct concerning
the hours of labor upon public works, much as the constitu-
tional provision aforesaid, concerning labor in mines and
upon state and municipal works. And each declaration in-
volves, no doubt, civil duties and obligations. But more
than that is required to impose a criminal liability. The
statute attempts the latter, by declaring generally that a
violation of the provision limiting the hours of labor shall
constitute a misdemeanor, and fixing penalties therefor.
But respecting the act or acts that may amount to a viola-
tion of such provision, or a standard from which they may
be determined by court or jury, or by any interested party,
the statute is silent.

By what rule, then, or upon what principle, may it be
determined that the act of a contractor permitting a longer
period of labor than that specified shall constitute such a
violation and subject him to the prescribed criminal pen-
alty? Who is to say, and by what authority, whether the
act of permitting a longer period of labor is to be deemed
criminal when done wilfully only, or with actual knowl-
edge, or that it shall be criminal if done merely with the
opportunity for knowledge, or whether the *mere fact that
the employee worked* for the longer period shall be con-
sidered as showing a permission by the contractor, officer,
body corporate, agent, manager or other employer, in the
absence of any overt act of permitting or any showing or
averment of knowledge of the labor so performed? Indeed,
who is to determine whether *permitting* such longer period
of labor, but without contracting for, requiring or insisting
upon it, and performed wholly as the voluntary act of the
workman himself, shall constitute a violation of the pro-
visions of Section 4308? These questions are especially per-
tinent for the reason that the information does not charge
that the act of permitting in this case was done wilfully or

with knowledge, but merely that the defendant unlawfully "did permit" the same. What is the standard for determining that the act was unlawful?

Upon what basis or principle of law is a case under an information like that in the case now here to be submitted to a jury? To what declaration of law may the court refer in charging the jury, under such an information, that the act charged was unlawful in a criminal sense and subject to statutory penalties? Would not such a charge, if given under the present statute, have to be based upon mere construction and implication? We think so. And that, we think, is entirely clear as to an act *permitting* overtime work, even though it might be possible to find sufficient in the statute to uphold a prosecution for *requiring,* or *contracting for,* such additional labor. To say that merely permitting voluntary work by an employee would violate the provisions of section 4308 could be based upon nothing but the wildest sort of implication—First, an *inference* that *some act* is criminally unlawful, though not, in terms so denounced, and then a *second inference* from the first that the act of permitting is unlawful, and, based upon that, *even a third inference* that such act is unlawful, though not wilful or intentional.

A comparison of this statute with others in the same and related chapters of the compilation will bring out distinctly its stated deficiencies as a penal statute. We shall not make that comparison here, except in one or two instances. The hours of female employment is regulated by sections 4313 and 4314 (since amended by Ch. 62, L. 1923) ; they specifically declare that no female shall be employed, suffered or permitted to work in certain stated establishments or kinds of employment more than a stated number of hours in any day, and also that the employment or permitting of any female to work for a longer time shall be deemed a misdemeanor and subject to stated penalties. That clearly defines the acts intended to be condemned by the statute, so that no one should have any difficulty in ascertaining the

nature of the act intended to be penalized. The statute considered in Koppala v. State, 15 Wyo. 398, 89 Pac. 576, 93 Pac. 662, is another illustration, though a part of that was challenged as uncertain.

The distinction between a statute properly describing the act intended to be penalized as a crime, and the one before us is shown also in a New York case, which is directly in point here. People v. Phyfe, 136 N. Y. 554, 32 N. E. 978, 19 L. R. A. 141. The act there considered, as stated in its title, was intended to "provide a limit" to hours of service on railroads. It is not set out in the decision as reported, but was Chapter 711 of New York Laws of 1892. Its first section declared that no person or corporation operating a railroad thirty miles or more in length shall require or permit any trainman who has worked for twenty-four hours to again go on duty until after he has had at least eight hours rest. The next section declared that ten hours labor within twelve consecutive hours shall constitute a day's labor on all railroads. The final section provided that any railroad company, officer, agent or employee thereof, violating any of the provisions of the act, shall be guilty of a misdemeanor and upon conviction punished by a stated fine for each offense. A defendant was charged with a violation of the second section, by compelling a trainman to work more than fourteen hours continuously without any part of such continuous service being caused by any unavoidable accident or delay. In the court's opinion reference is made to the first section—prohibiting the requiring or permitting of any trainman to go on duty again until having had at least eight hours rest, after having worked continuously for twentyfour hours, and the court remarked that said section was supplemented by the provision of the last section making the disregard thereof a misdemeanor; but, with reference to the *second* and the last sections aforesaid, the court said (italics ours) :

"When we examine the *remaining sections we fail to find
in them any inhibition* upon the action of these corporations
*either in express words or by necessary implication. The
second section merely declares that ten hours labor per-
formed within twelve consecutive hours shall constitute a
day's labor* in the operation of  *  *  *  railroads  *  *  *.
*It is but a statutory definition* of what shall constitute a
day's labor in certain employments, and would control in
any controversy affecting the civil liabilities of the employ-
er in the absence of an express agreement to the contrary.
*There is no prohibition aimed at the railroad company
against permitting or requiring more hours of labor during
the calendar day.  *  *  * * If the legislature had intend-
ed to make it unlawful for a railroad company to permit,
or require, an employee to work more than ten hours with-
in twelve consecutive hours, we must infer that they would
have so declared in direct terms.  *  *  *  We are re-
quired here to apply that principle of construction, which
is coeval with municipal law, that purely statutory offenses
cannot be established by implication, and that acts other-
wise innocent and lawful do not become crimes unless there
is a clear and positive expression of the legislative intent to
make them criminal.  The citizen is entitled to an unequivo-
cal warning before conduct on his part, which is not *malum
in se,* can be made the occasion of a deprivation of his lib-
erty or property.  *Under a proper application of these fa-
miliar rules of interpretation, it must be apparent that the
second and third sections of this act are not penal in their
scope.*  No prohibitory words are found in them, and no
terms employed from which a prohibition can reasonably
be inferred.  The language used is consistent with an in-
tention to confine them to a regulation of the private rights
and civil liabilities of the contracting parties, and when
they can be so construed there is no presumption that more
was intended.  We are not permitted to speculate as to the
motives and design of the law makers or to search for a hid-
den meaning or unexpressed purpose in the enactment.''

Another New York case is also directly in point. People ex rel Warren v. Beck, 144 N. Y. 225, 39 N. E. 80. That case came to the Court of Appeals from an order of the superior court of the City of Buffalo vacating a writ of habeas corpus, issued on behalf of the relator, who had been convicted in the police court of a misdemeanor for violating a section of the Revised Charter of that city, reading, so far as material here, as follows:

"In contracting for any work required to be done by the city, a clause shall be inserted that the contractor submitting proposals shall bind himself in the performance of such work not to discriminate either as to workmen or wages against members of labor organizations, or to accept any more than eight hours as a day's work, to be performed within nine consecutive hours. Nor shall any man or set of men be employed for more than eight hours in twenty-four consecutive hours except in case of necessity, in which case pay for such labor shall be at the rate of time and one-half for all time in excess of such eight hours."

The relator was superintendent of a company which had contracted with the city to pave one of its streets. In one of the departments of the Supreme Court the appeal from a judgment affirming the judgment and sentence of the police court (People v. Warren, 77 Hun. 120, 28 N. Y. S. 303), the charter provision was challenged as unconstitutional and void because in violation of the 14th amendment to the federal constitution and a stated section of the constitution of New York, containing similar provisions. And it was therein stated that no other ground of error was argued or suggested. Upon that hearing, the said charter provision was upheld as valid. And the same question seems to have been again presented in the Superior Court of Buffalo (People ex rel Warren v. Beck, 10 Misc. 77, 30 N. Y. S. 473), when the charter provision was again held to be valid against the same contention as to unconstitutionality.

When disposing of the case in the Court of Appeals, that court referred to the fact that elaborate opinions were delivered in the courts below, in which the alleged unconstitutionality of the provision was discussed at length, but that 'in the view we take of this appeal'' that constitutional question was said to be unnecessary to be considered. And that court disposed of the case by holding that the charter provision was not penal in character. And the court said:

"The clause * * * is wholly administrative in its nature and directs in detail the manner in which contracts shall be drawn relating to any work required to be done by the city; it is not penal in character, nor does it impose upon anyone entering into a contract with the city any duty or obligation whatsoever; it simply deals with the general subject of contracts and prescribes certain provisions to be inserted by the city in any contract. When the city of Buffalo entered into the contract * * * it inserted therein the provision required by this clause of the charter. We are not called upon at this time to decide the legal effect of the alleged violation of these provisions * * *. We do hold, however, that this clause does not in any way apply to the relator, and that his arrest, trial and conviction were without jurisdiction, and void. *We are also of opinion that this clause cannot be the basis for the criminal indictment of any person for a misdemeanor.''* (Italics ours.)

Another case directly in point is State v. Trapp, 140 La. 425, 73 So. 255. There a defendant was convicted of permitting a fourteen-year-old girl to serve in a barroom conducted by him. The information had been demurred to upon the ground that the statute did not denounce as a crime or misdemeanor or penalize the act charged. The statute provided that no woman or girl shall serve in any barroom, cabaret, saloon, etc., and in another section penalties for the violation, by a proprietor of a barroom, of any of the provisions of the act. But the statute did not declare it to

be unlawful, or a misdemeanor, for a person conducting a barroom or drinking saloon to employ or permit a woman or girl to serve therein, nor make it a misdemeanor on the part of the woman or girl to serve therein.  The court said:

"As the statute does not declare that a proprietor of a barroom or drinking saloon, who permits a woman to serve in a barroom or drinking saloon, shall be deemed guilty of a misdemeanor, the courts cannot declare him guilty, however certain it may be that the omission on the part of the legislature was inadvertent.  *  *  *  If the legislature has accidentally or inadvertently failed to express the intention that certain conduct shall constitute a crime or misdemeanor, the courts cannot correct the error or supply the omission, no matter how plainly the conduct in question is within the mischief intended to be remedied by the statute."

And see, as cases also in point, State v. Guidry, 142 La. 422, 76 So. 843; State v. Brinson, 149 La. 319, 89 So. 18. In the case last cited the court said that an act cannot be made unlawful except by positive terms, and that the denouncing of an act as unlawful cannot be done inferentially or by implication.

A case above cited, U. S. v. Reese, 92 U. S. 214, 23 L. ed. 563, is quite closely in point also.  Two inspectors of a municipal election in Kentucky were indicted for refusing to receive and count the vote of a citizen of African descent.  The court held that congress had not provided by appropriate legislation for the punishment of the act charged.  We quote the following remarks:

"It is not claimed that there is any statute which can reach this case, unless it be the one in question.  Looking, then, to this statute, we find that its first section provides that all citizens of the United States, who are, or shall be, otherwise qualified by law to vote at any election, &c, shall be entitled and allowed to vote thereat, without distinction of race, color, or previous condition of servitude, any con-

stitution, &c., of the state to the contrary notwithstanding. *This simply declares a right, without providing a punishment for its violation.* The second section provides for the punishment of an officer * * * who shall omit to give all citizens * * * equal opportunity to * * * become qualified. * * * These do not apply to or include *the inspectors of an election,* whose only duty it is to receive and count the votes of citizens who have already become qualified to vote at the election.'' (italics ours.)

City of Helena v. Gray, 7 Montana 486, 17 Pac. 564, is directly in point. A city ordinance designated in its first section certain streets upon which ''cabs shall stand,'' and in the second section provided that any person violating the ordinance shall be guilty of a misdemeanor and upon conviction subject to a stated fine. The court held that there was nothing in the ordinance directly forbidding the act of the defendant, which was keeping a cab standing on a street not so designated, and said that such an ordinance, to make the act a misdemeanor, must be specific and definite, using such words as will state, without resort to implication, what constitutes a violation thereof. In a Kentucky case, Commonwealth v. Galloway, 203 Ky. 102, 261 S. W. 887, the following statutory provision was considered: ''Physicians may issue and pharmacists fill prescriptions for intoxicating liquor, under the restrictions of the national federal law.'' The court said concerning it:

''Clearly this is no requirement that they may not be issued in any other way than under such restrictions, nor is there a penalty prescribed for their issual otherwise than under such restrictions. On the contrary, it is a mere permissive right to issue the same under such federal restrictions, and the failure to make such issual in any other way an offense under the said law, and the failure to prescribe a penalty for such issual, make it apparent that the statute is only permissive in its terms, and that there is no such offense under the said statute. * * * It may be said that

under the provisions of section 42,  *  *  *  a penalty is fixed in general terms.  *  *  *  That section provides: 'A failure to comply with any of the provisions of this act shall be a misdemeanor, and upon conviction, where no other penalty is specially provided, the punishment fixed in section 2 of this act shall be inflicted.' *A complete answer to this is that there is no requirement * * * that physicians shall issue such prescriptions only under the restrictions of the federal act or otherwise,* but the language is susceptible of no other interpretation than that it is merely permissive.  *  *  *  In a penal statute, the mere granting of a privilege to do a thing in a particular way may not be construed into a prohibition against doing that thing in any other way,  *  ·*  *."

In Buckles v. State, 5 Okla. Crim. App. 109, 113 Pac. 244, a statute purporting to define the offense of embezzlement by county treasurers was held void for uncertainty because failing to specify or enumerate what or whose property, money or thing is intended to be made the subject of embezzlement.

In another case cited above, U. S. v. Brewer, 139 U. S. 278, 11 S. Ct. 538; 35 L. ed. 190, the indictment was for a violation of section 5515, U. S. Rev. Stat., relating to the conduct of congressional elections, and charged two defendants, as election judges, and another as returning officer, with a violation of their duty of opening the ballot box at the place where the election was held, and there count the votes, by having, after the polls were closed, removed the ballot box to another place, and then and there read from the ballots. The court said that the statute did not "provide distinctly and specifically, in words required in a criminal statute," that the box shall be opened at the place where the election was held, or that the ballot box shall not be removed from that place before counting the votes. And it was held that a demurrer to the indictment should be sustained on that ground.

It is quite possible that it may have been intended by the statute in question to make criminal and punish some act of the employer that should result in lengthening the time of service of the employee beyond that mentioned in the first of the two sections of the statute here involved. But if they have omitted so to declare, though inadvertently or accidentally, the intended declaration cannot be enforced, for the court is powerless to add the necessary words to the statute. State v. Brinson, 149 La. 320, 89 So. 18.

There are many cases affirming and applying the general principle, where the uncertainty in the statute is not so much in the failure to denounce a particular act as a crime, but in the language employed for that purpose held to be so general, indefinite or ambiguous as to leave a determination by court or jury a matter of mere guess or suspicion. For example, in two decisions under a state statute requiring the erection and equipment of buildings to protect the safety, health and comfort of employes in the construction and repair of railroad cars on tracks, and providing a penalty for a violation, the court in each case referred to certain words of the statute as too uncertain to fix a standard of guilt. Wabash R. R. Co. v. O'Bryan, 285 Fed. 583; C. & N. W. Ry. Co. v. R. R. Commission, 280 Fed. 387. We quote from the case last cited:

"What is the standard of guilt? When is it fixed and by whom? The words 'rain and snow,' are hardly definite enough in a criminal statute. The words 'heat and cold' are so elastic in their meaning as to cover the whole range of temperature. * * * What is meant by 'inclement weather?'" * * * It is surely necessary that limitations shall be placed upon all of these terms. But who is to supply the limitations, the employer or the employe? or the court? or the jury? * * * This power cannot be delegated to individuals, courts or juries."

Other cases of the same general nature which may be cited are Toser v. U. S. (C. C.) 52 Fed. 917; U. S. v. Armstrong, (D. C.) 265 Fed. 683; Bank v. U. S., 206 Fed. 374, 124 C. C. A. 256; 46 L. R. A. (N. S.) 1139; Gen. Const. Co. v Connally, (D. C.) 3 Fed. 2nd Ed. 666; Ex parte Peppers, 189 Cal. 682, 209 Pac. 896; State v. Skinner, 20 Ala. App. 204, 101 So. 327; People v. Ellis, 304 Mich. 157, 169 N. W. 930; State v. Satterlee, 110 Kans. 84, 202 Pac. 636.

In State v. Thompson, supra, decided by this court, the precise question here involved was not considered, although it was referred to in the briefs. That case involved an eight hour statute for coal miners, except where necessary to work a longer period for the protection of property or human life. It provided in one section for the punishment of the owner, lessee or operator violating any provision of the act. A coal miner being prosecuted for having wilfully worked more than the period prescribed, the court said that it was nowhere declared in the statute, in terms, to be unlawful for miners or laborers to work more than eight hours in twenty-four, and that they were not included in the penal provision aforesaid of the statute. But the court was not required to, and did not, consider whether the statute was sufficient to punish the employer. The case is, however, in point so far as it construed the first section of the statute as failing to make it unlawful for the laborer to work for a longer period than that specified.

We are aware of a different conclusion with respect to this question under like statutes relating to the same subject matter in at least two cases. State v. Livingstone Bldg. & Mfg. Co., 34 Mont. 570, 87 Pac. 980, 9 Ann. Cas. 204; Short v. Bullion-Beck & C. M. Co., 20 Ut. 20, 57 Pac. 720, 45 L. R. A. 603. But the statute was not sought to be enforced as a criminal statute in the Utah case. It was not a criminal prosecution, and, therefore, it cannot be said that the point before us here was directly involved or decided there. And that decision and one other relating to another subject are all that are cited as authority for the conclusion

in the Montana case. But in that case there is a discussion of the question upon principle, and the court held the statute to be sufficiently definite to permit the intention of the legislature, as the court conceived it, to be enforced.

The decision is entitled to our respect as being that of an able court, but we cannot agree with the conclusion, and it is not in line with what we believe to be the clear weight of authority. Under a similar statute in Oklahoma a conviction of the contractor on public work was upheld as against the general contention that the statute was unconstitutional upon grounds first discussed in this opinion. But it does not appear that the question of the invalidity because of its uncertainty as a penal statute was either considered or presented. Byars v. State, 2 Okl. Cr. 481, 102 Pac. 804, Ann. Cas. 1912 A, 765. The statute considered in that case seems to have been superseded in the same or succeeding year by another, whereby it was expressly declared to be unlawful to require, aid, abet or permit any laborer, workman, mechanic, etc., to work more than eight hours per calendar day in doing such work. Okl. Comp. L. 1909, §§ 4057-4060.

The fourth and fifth reserved questions may be disposed of without additional discussion. In view of the decision in Atkin v. Kansas, supra, we think it cannot be said that the statute is in conflict with section 22 of Article I of our state constitution, requiring that the rights of labor shall have just protection, etc. Nor do we think the statute could be held to be in conflict with Section 34 of Article I, providing that all laws of a general nature shall have a uniform operation, in view of the decision in the Atkin case, which we have felt constrained to hold controlling upon the question of the right of the legislature to limit the hours of labor upon public works. But there could not be any reasonable objection to the statute that its operation would not be uniform throughout the state, as a constitutional provision requiring uniformity of operation is usually understood and applied. For that provision is held to be satisfied by a statute "applying uniformly within a class of persons based on

a reasonable distinction, or objects of a reasonable class, and operating the same on all parts of the state under the same circumstances.''   36 Cyc. 992.

Our answer, then, to the reserved questions may be stated as follows:   The second question, referring to the 5th Amendment to the Federal Constitution, must be answered in the negative for the reason, already stated, that said amendment has no application to state governments.

It will be unnecessary to return a categorical answer to the other questions.   We hold that the legislature has and had power to limit and restrict the hours of labor upon public works of the state, county, city, or town, or other political subdivision thereof, in the manner provided by Section 4308, Wyo. Comp. Stat. 1920, originally Section 1 of Chapter 90 of the Laws of 1913, and for that purpose and to that extent the statute does not conflict with the provisions of Section 6 or Section 22 of Article I of the Constitution of this state, or of the provisions of the 14th Amendment to the Constitution of the United States.   But we hold it to be void and unenforceable as a penal statute because of the indefiniteness and uncertainty of its penal provisions, bringing it into conflict with Section 6 of Article I of the Constitution of this state, and the 14th Amendment to the Constitution of the United States, each providing that no person shall be deprived of life, liberty or property without due process of law.

BLUME and KIMBALL, JJ., concur.